FRANKLIN LIFE INSURANCE COM-
PANY, a corporation, Plaintiff,

v.

Julie Ann MAST, Kathrine Louise Mast, and Jonathon Lee Mast, minors by their Guardian Ad Litem, Jack I. Redhair; C. Lee Mast; Southern Arizona Bank and Trust Company, a corporation, as Executor of the Estate of Elizabeth L. Mast, Deceased; and James Talcott, Inc., a New York corporation, Defendants.

Muriel Sandusky, Trustee in Bankruptcy, Defendant in Intervention.

Civ. No. 2362–Tuc.

United States District Court
D. Arizona.
June 19, 1968.

A. O. Johnson, Holesapple, Conner, Jones, McFall & Johnson, Tucson, Ariz., for Franklin Life Ins. Co.

James L. Richmond, Chandler, Tullar, Udall & Richmond, Tucson, Ariz., for Julie Ann Mast et al.

Russell E. Jones, Hall, Jones, Hannah, Trachta & Birdsall, Tucson, Ariz., for Executor of Estate.

Lawrence Ollason, Hirsch, Van Slyke & Ollason, Tucson, Ariz., for Muriel Sandusky, trustee in bankruptcy.

## OPINION

KILKENNY, District Judge:

The plaintiff interpleads the defendants so that the Court may determine the proper beneficiaries under an insurance policy for $98,950.00, issued on June 4, 1965, to decedent Elizabeth Mast, on an application dated May 11, 1965. The face of the policy has been paid into Court. Plaintiff claims no interest in the proceeds, nor a right to designate the beneficiaries. The language of the policy designating the beneficiaries reads: "C. LEE MAST, HUSBAND", as the primary beneficiary, and "CHILDREN BORN OF THE INSURED'S MARRIAGE TO SAID HUSBAND" as first contingent beneficiaries. Claimants to the fund are: (1) decedent's three minor children, (2) Southern Arizona Bank and Trust Company, executor of decedent's estate, and (3) defendant Sandusky, Trustee in Bankruptcy for C. Lee Mast.

Mrs. Mast died in an automobile accident on November 19, 1965, between Wickenburg and Prescott, Arizona. Mast was subsequently indicted for her murder. While held for the murder he agreed to renounce in favor of his children any rights he might have under the insurance policy. This alleged renunciation [1] was

---

[1] "Ashby I. Lohse, Esq.
Merchant, Lohse, Donahue & Bloom
406 North Church Avenue
Tucson, Arizona
 Re: Estate of Elizabeth L. Mast, Deceased.
Dear Ashby:
 My understanding of the agreement entered into with you, Colonel Lingard, and me, is as follows:

 1. Mr. Mast will renounce all right to inherit under Mrs. Mast's Will;
 2. Mr. Mast will renounce in favor of his children any rights he may have under the double indemnity policy secured from Tracy Prater;
 3. Mr. Mast will renounce in favor of his children all rights he may have under the life insurance policy obtained through the Richfield Oil Corporation.

signed under a power of attorney with the understanding that a holographic will of Mrs. Mast would be withdrawn from probate and an earlier typewritten will substituted in its place. It was then supposedly feared that the holographic will would prejudice Mast's defense in the criminal action. The criminal charges against him were later dismissed. Mast confirmed the renunciation of the insurance proceeds to his children after this litigation was commenced. The holographic will was later admitted to probate. On September 1, 1967, Mast filed a voluntary petition for bankruptcy.

On May 18, 1965, Mrs. Mast executed a holographic codicil to her will. This codicil, in pertinent part, read:

"The beneficiary of the insurance policy is listed as my husband Chancey Lee Mast or C. Lee Mast. Since I was induced to sign the policy because of concern for the welfare and educational needs of the children, I would like to direct—and do so direct if at all legally possible—that the proceeds of this policy be distributed as follows: $5,000 to my husband Chancey Lee Mast; the remainder to be considered a part of my estate to be used for payment of just expenses after which the remainder shall go into the body of the trust or trusts to be used for the benefit of my designated heirs."

This provision was subsequently republished in a codicil executed on July 1,

1965. These codicils were admitted to probate in the Arizona Court having jurisdiction on November 29, 1967.

The insurance policy contained the following provision:

"*Change of Beneficiary:* Any Benficiary may be changed by the Owner at any time during the Insured's lifetime by filing a written request at the Home Office of the Company. Such change will take effect only when endorsed upon this policy or otherwise recorded as the Company may require, but upon endorsement or recording the change will relate back to, and take effect as of, the date said written request was signed whether or not the Insured be living at the time of such endorsement or recording, subject to the rights of any Assignee of record with the Company and subject to any payment made or action taken by the Company before the written request for change was received at the Home Office."

## CONTENTIONS.

(1) The Mast children contend that the codicil executed by Mrs. Mast is ineffective to change the beneficiaries under the insurance policy and that the renunciation by their father effectively passed the proceeds to them.

(2) The Southern Arizona Bank and Trust Company, as executor of Mrs. Mast's estate and as trustee of the trust created in her will, contends that the cod-

---

A contention [written over to read 'condition' and initialed A. I. Lohse] of his renunciation of this item is that such part of it may be used to pay community debts as may be necessary, all other assets having been looked to first.

4. Mr. Mast reserves the right to borrow money on the community assets insofar as possible but solely for the defense of the criminal charges now pending against him. We all understand that all community assets are earmarked to pay all community debts.

5. In return for Mr. Mast's renunciations as herein above recited it is agreed that we will offer the typewritten Will prepared by your office for probate and will not offer the holographic Will. It is further understood and agreed that the Southern Arizona Bank will act as

Executor thereof and that this office will act as attorneys for the Executor;

6. We all understand that the intent and purpose of this arrangement is to seek the greatest security for the minor children.

If this accurately recites your understanding please indicate your concurrence by your signature on the bottom of the original and return same to me. A copy is enclosed for your file.

Thank you.

 Yours very truly,

 CHANDLER, TULLAR, UDALL & RICHMOND

 By /s/ Robert S. Tullar

RST:jc

/s/ Ashby I. Lohse

/t/ Ashby I. Lohse"

icil executed by Mrs. Mast effectively overrides the provisions in the insurance policy and that the proceeds should pass according to the provisions outlined by Mrs. Mast in her will.

(3) Muriel Sandusky, trustee in bankruptcy for the C. Lee Mast Estate, contends that neither the codicil executed by Mrs. Mast, nor the renunciation by Mr. Mast were effective and that, therefore, the proceeds passed to Mr. Mast and rightfully belong to his estate to be distributed to his creditors.

(1) It is with considerable reluctance that I find myself compelled to hold that the weight of substantial evidence is against the childrens' contention that Mast renounced his rights as the principal beneficiary under the policy. The evidence clearly indicates that Mast, in his byplay on renunciation, was attempting to eliminate some obstacles to a proper defense in his criminal case. The letter of January 12, 1966, is neither a renunciation, nor an assignment. At most, it is a declaration that Mast would renounce, or assign in the future, under certain conditions. For that matter, Mast's subsequent demand that he be paid the proceeds of the policy and his later refusal to sign the endorsements as presented, make it evident that he had no intention to renounce, or to abandon the proceeds of the insurance policy. That his true intention was to make a record for his defense in the murder trial is made certain by his demand upon the insurance company for the payment of the proceeds of the policy, just as soon as the murder charge was out of the way. His renunciation on October 10, 1967, after he had been adjudicated a bankrupt is of no importance. The defendant children and their guardian have failed to establish a renunciation or an assignment in their favor and my finding must be against them.

(2) Since this contention involves the effect of the language of Mrs. Mast's holographic will in connection with the change of the beneficiaries under the policy, it is appropriate to recognize that a federal court has no jurisdiction over probate proceedings. Yet there is no barrier to a federal court adjudicating claims which do not interfere with the probate proceedings, nor assume a general jurisdiction of probate or control of the property in the custody of the state courts. The adjudication of the Arizona court that the holographic will or codicil, dated May 18, 1965, was valid, is binding on this court. Whether the language of the codicil is effective to change the beneficiaries under the policy before me is an issue of Arizona law properly within this court's jurisdiction. Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909); Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296 (1946).

For my consideration is the very narrow issue, under Arizona law, whether the language of the codicil, dated May 18, 1965, as republished in a codicil, dated July 1, 1965, effectively changed the beneficiaries in the policy.

Arizona follows the general rule that the owner of a policy can change his beneficiary at will, but ordinarily he is required to make the change in the manner required by the insurance contract. In stating this rule, the Arizona court in McLennan v. McLennan, 29 Ariz. 191, 240 P. 339 (1925), recognized three exceptions: (1) if the society has waived a strict compliance with its own rules, or in pursuance of a request of the insured to change his beneficiary has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued; (2) if it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been regularly made, and (3) if the insured has pursued the course pointed out by the laws of the association, has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate

had been issued. There, the court found that none of these exceptions applied to the facts.

The case of Doss v. Kalas, 94 Ariz. 247, 383 P.2d 169 (1963), is more in point. There, the Arizona court again recognized the three exceptions stated in *McLennan.* Two insurance policies were involved. One reserved the right to change beneficiaries, but no particular procedure was required. The other policy contained a clause similar to the one here in question, i. e. that a change of beneficiaries would be effective only upon receipt of the request for a change at the Home Office of the company. The assured's two children were originally named as beneficiaries in each of the policies. Later, by will, he appointed a trustee to administer the proceeds of the insurance policies for the benefit of the minor children. The company, without objection, paid the policy proceeds to the trustee designated in the will. In passing on the issue, the court made it clear that a clause in an insurance policy is for the benefit of the insurer and cannot be questioned if the insurer does not demand a compliance with the policy provisions.

In Doss, the Arizona Court employed, in large measure, the legal principles stated in Sears v. Austin, 292 F.2d 690 (9th Cir. 1961). Consequently, in analyzing *Doss,* we must look to *Sears.* There, the assured originally designated his children as the beneficiaries of the proceeds of the policy. Later, by holographic will, he directed that the proceeds of the policy be paid to a Mrs. Austin, giving one dollar to each of the children. In *Sears,* as here, the proceeds of the policy were deposited in court in a declaratory judgment action. On the reverse side of the certificate issued to *Sears* was a requirement of the same general tenor as here presented.[2] The pertinent findings of the District Court are set forth in the margin.[3] Applying the law to the facts found by the District Court, the Court of Appeals decided that the provisions of the policy setting up the method by which the beneficiary might be designated were solely for the protection of the insurer. Emphasis was placed on the fact that the case before the court was a battle between possible beneficiaries and that there was no reason to invoke technical provisions designed to protect the insurer against the possibility of double payment. The court then went on to say that the clearly manifested intent of the insured should control.

Although the *Sears* case was decided under Federal law, I cannot overlook the stress placed thereon by the Arizona court in *Doss.* In analyzing the Federal rule, as stated in *Sears,* as against the rule stated in the majority opinion in Stone v. Stephens, 155 Ohio St. 595, 99 N.E.2d 766, 25 A.L.R.2d 992, 996 (1951), and Cook v. Cook, 17 Cal.2d 639, 111 P.2d 322 (1941), the Arizona court quoted with approval from *Sears.*[4] Accentuat-

2. " * * * To be valid, your designation or change of beneficiary must be in writing, signed and witnessed, and must be received by the Commission before your death. * * * " (292 F.2d 690 at 691–692.)

3. "Unquestionably, decedent failed to follow the prescribed procedure in executing the designation of plaintiff, but it is equally free of doubt that the will manifested an unequivocal intention that the proceeds of the policy should accrue to her. Considering the particular circumstances of his case, and in view of the fact that decedent was a sick and ailing man, the execution of the will can be deemed a reasonable effort on his behalf to execute the designation of plaintiff as beneficiary." (292 F.2d 690 at 692.)

4. "We feel that the provisions of this policy setting up the method by which a beneficiary may be designated or changed are for the protection of the insurer, and we do not feel that the technical provisions are placed in the policy to protect the insured against hasty or impetuous action. In the case now before this court, the insurer is no longer a party, and the battle is between possible beneficiaries. Since this is the case, there is no reason to invoke technical provisions designed to protect an insurer against the possibility of double payment. We feel that the clearly manifested intent of the insured should control." (Sears v. Austin, 292 F.2d 690, 693 (9th Cir. 1961.)

"We believe that the latter rule is founded on the better reasoning. The

ing the position of the Arizona court, I point to the adoption by the court of the rule as stated in the dissenting, rather than the prevailing, opinion in Stone v. Stephens, supra. Of great importance is the fact that the court in *Doss*, to all intents and purposes, overruled its broad statement in *McLennan* that the insurance company, by interpleading, did not express an intent to waive the change of beneficiary provisions.[5]

 In *McLennan*, great importance was placed on the fact that the insurance company had previously indicated *its intent to insist on compliance with the change of beneficiary provisions of the policy*. No such intent was, or is, indicated by the insurer in the case at bar. Inasmuch as the insurer is not insisting on a strict compliance with the contractual requirements as to the change of beneficiary—for that matter, it has deposited the fund in court and washed its hands of the entire affair—there is no good reason why I should not recognize the declared intent of Mrs. Mast in the codicil to her will dated May 18, 1965.

 Moreover, the totality of circumstances before me present a tragic portrait of a woman who was in deathly fear of her husband at the time she executed a codicil on June 9, 1963, a relevant part of which is quoted in the footnote.[6] By the terms of this codicil, her husband was totally disinherited. In the codicil dated May 18, 1965, she declared that the typewritten will dated May 14th of the same year, was made at the insistence of her husband and did not represent her wishes. By the same instrument, she, in substance, declared that her husband was listed as the chief beneficiary of the policy at his own insistence, but that it was her desire to devote the fund to the educational needs of the children, with only $5,000.00 going to her husband. In a later codicil, dated July 1, 1965, she made it rather clear that she was in fear of her life.[7] There is substantial evidence in this case that Mrs. Mast was a frightened mother, who did not want her husband to learn of the change in beneficiaries. It was beyond her power, in her then mental state, to literally comply with the requirements of the policy on the change of beneficiaries. Consequently, I should employ the powers of a court of equity and treat the change of beneficiaries as having been regularly made, all within the confines of the second exception mentioned and enunciated

provisions in a policy of insurance as to the procedure for making a change of beneficiary are for the benefit of the insurer. If the insurer does not choose to require enforcement thereof, and the rights of the respective claimants alone are before the court, the intent of the insured should govern. Sears v. Austin, supra; Stone v. Stephens, supra (dissenting opinion) * * *."

5. "In McLennan v. McLennan, supra, before his death the insured attempted to change the beneficiary by a method other than that provided for in the policy. The insurer refused to accept the change and advised him he must follow the procedure set forth in the policy. The insured then died, leaving a will which attempted to change the beneficiary. Later the insurer interpleaded, *and we held the interpleader did not constitute a waiver in view of the fact that the insurer had previously indicated its intent to insist on compliance with the change of beneficiary provision in the policy*." (Doss v. Kalas, 383 P.2d 169, 171, Footnote 2.)

6. "It is possible there will be a will of later date than this, drawn by an attorney, but this later will, although it may contain the statement that all previous wills and codicils shall be considered null and void, will have been arranged for by Chancey Lee Mast, my husband, and will contain his wishes rather than my own—although it will carry my signature. I therefore declare this holographic will to be my last will and testament, to take precedence over any future will prepared by an attorney or typewritten, this to be in effect unless and until revoked in writing by me or revoked orally before a disinterested witness or witnesses should I be unable to write."

7. "I am trying to do what is best for the family. This holographic will is my insurance that the children will be taken care of *if something happens to me*. I live in the hope that everything will turn out all right." (Emphasis supplied.)

by the Arizona Supreme Court in Mc-Lennan v. McLennan, supra.

Summing up, I find that Mrs. Mast effectively changed the beneficiaries under the policy in question, and that the persons entitled to the proceeds deposited in court are those named in the codicil dated May 18, 1965, i. e. $5,000.00 to Chancey Lee Mast,[8] with the balance to the executor of the estate of Elizabeth L. Mast, deceased.

This opinion shall serve as my findings and conclusions. Counsel for the executor shall draft, serve and present an appropriate judgment.

8. Muriel Sandusky, Trustee in Bankruptcy.