**FRANKLIN LIFE INSURANCE COMPANY, a corporation, Plaintiff-Appellee,**

v.

**Julie Ann MAST et al., Defendants-Appellants.**

**FRANKLIN LIFE INSURANCE COMPANY, a corporation, Plaintiff-Appellee,**

v.

**Muriel SANDUSKY, Defendant-Appellant.**

**Nos. 23502, 23570.**

United States Court of Appeals, Ninth Circuit.

Dec. 10, 1970.

James L. Richmond (argued), of Chandler, Tullar, Udall & Richmond, Tucson, Ariz., for Julie Ann Mast and others.

Lawrence Ollason (argued) of Hirsch, Van Slyke & Ollason, Tucson, Ariz., for Muriel Sandusky.

Russell E. Jones (argued), of Holesapple, Conner, Jones, McFall & Johnson, Tucson, Ariz., for plaintiff-appellee.

Before BROWNING, CARTER and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an interpleader action filed by The Franklin Life Insurance Company to determine those persons entitled to the proceeds of a life insurance policy written on the life of Elizabeth L. Mast. The policy was a Decreasing Term Policy in the face amount of $50,000 with a double indemnity provision in the event of accidental death. Mrs. Mast was killed in an automobile accident in November 1965 while the policy was in full force and effect. The Company paid the

proceeds of the policy, in the sum of $98,950, into the registry of the court when it filed the action. Mrs. Mast was the applicant for, the insured under, and the sole owner of the policy. It provided when issued that C. Lee Mast, husband, was the primary beneficiary and "children born of the insured's marriage to said husband" were the first contingent beneficiaries. Julie Ann Mast, Katherine Louise Mast and Jonathan Lee Mast, all minors, were children of the marriage. Both the husband and the children survived the insured.

An attempt to alter the shares of the beneficiaries as set forth in the policy provides the basis for this interpleader action. The policy contained a provision setting out the procedure for changing beneficiaries,[1] but that provision was not followed, and the following sequence of events occurred.

On November 22, 1958, Mrs. Mast, executed a holographic will in which she created a testamentary trust designating the Southern Arizona Bank & Trust Company of Tucson, Arizona, as Trustee and the three Mast children as beneficiaries of the specific sum of money with the residue of the estate to her husband, C. Lee Mast.

On June 9, 1963, Mrs. Mast executed the First Codicil to her will in which she changed the devisee and legatee of the residue of her estate from her husband to the testamentary trustee for the benefit of her children.[2]

On May 11, 1965, she signed an application for the insurance policy in question.

On May 14, 1965, she did execute a formal typewritten will in which her signature was attested and in which her husband received all income for life with the right to invade the principal.

Four days later on May 18, 1965, Mrs. Mast executed a Second Codicil to her holographic will. In this codicil she very positively revoked the formal attested will of May 14, 1965, and reaffirmed and republished the provisions of her original holographic will.[3]

She also, in this will, referred to the insurance policy in question in these words:

"During the past week I have also signed at the insistence of my husband a Power of Attorney and an application for an insurance policy with the Franklin Life Insurance Company whose local agent is Mr. Tracy Prater. "At my death, I assume the Power of Attorney will be null and void, which is my wish.

"The beneficiary of the insurance policy is listed as my husband, Chancey Lee Mast or C. Lee Mast. Since I was induced to sign this policy because of concern for the welfare and educational needs of the children, I would like to direct—and do so direct

---

1. "Change of Beneficiary: Any beneficiary may be changed by the Owner at any time during the Insured's lifetime by filing a written request at the Home Office of the Company. Such change will take effect only when endorsed upon this policy or otherwise recorded as the Company may require, but upon endorsement or recording the change will relate back to, and take effect as of, the date said written request was signed whether or not the Insured be living at the time of such endorsement or recording, subject to the rights of any Assignee of record with the Company and subject to any payment made or action taken by the Company before the written request for change was received at the Home Office." (Ex. 1).

2. She also anticipated a later formal will which she might be forced to sign by her husband, and stated that such a will would not in fact represent her true wishes.

3. "This codicil to my holographic will, to which this is attached, is expressly written to nullify the typewritten will now on file in the office of Merchant, Lohse, Donahue and Bloom. It is dated May 14, 1965.
   "The typewritten will was executed at the direction and insistence of my husband, Chancey Lee Mast, and it does not represent my wishes as to the disposition of my estate." (Ex. 10).

if at all legally possible—that the proceeds of this policy be distributed as follows: $5000 to my husband Chancey Lee Mast; the remainder to be considered a part of my estate to be used for payment of just expenses after which the remainder shall go into the body of the trust or trusts to be used for the benefit of my designated heirs."

On July 1, 1965, she executed a Third Codicil in which she republished her holographic will with the two prior codicils.[4]

In all of these handwritten instruments she had expressed fear for her own safety, her concern that she might die a death which had been made to look accidental, her fear of her husband, and her concern to provide for her children with a minimum of regard for her husband's participation in her estate. She died in an automobile accident on November 19, 1965. Her husband was indicted for murder but the charges were subsequently dismissed.

The holographic will of November 22, 1958, and the three holographic codicils were duly admitted to probate by the Superior Court of Pima County, Arizona, and executors appointed as designated. C. Lee Mast filed a Debtor's Petition in the United States District Court on September 1, 1967, seeking an adjudication to be declared a bankrupt.

Those who assert a claim to the proceeds of the policy are: (1) The Mast children under the terms of the policy itself and the renunciation by C. Lee Mast of all of his rights under this specific policy. They assert that the holographic will and codicils were ineffective to change the beneficiaries in the face of the policy provision for change of beneficiaries. (2) The Southern Arizona Bank & Trust Company as a co-executor of the estate of the deceased claims under the holographic documents, asserting that they were effective to change the beneficiaries under the policy. (3) The Trustee in Bankruptcy for C. Lee Mast claims the entire policy proceeds, asserting that neither the holographic documents nor the renunciation were sufficient to defeat the terms of the policy making Mr. Mast the sole primary beneficiary of the policy.

The trial court (1) correctly held[5] that the adjudication of the Superior Court of Pima County admitting the holographic will and codicils to probate as the last will and testament of Elizabeth Mast, was binding on the federal courts. (2) It held also that the holographic Second Codicil of May 18, 1965, was a legally effective change of the beneficiaries of the insurance policy with the result that $5,000 of the proceeds of that policy should be paid to C. Lee Mast and the remainder should go to Mrs. Mast's estate. (3) Finally, the trial court held that the husband did not subsequent to his wife's death effectively renounce his right under the policy to receive $5,000 and therefore this amount should be paid to him or to his Trustee in Bankruptcy. We agree with the trial court except for the finding that there was no legally binding renunciation by C. Lee Mast. In this respect we disagree and hold that $5,000 of the policy proceeds directed to be paid to Chancey Lee Mast should be paid to the children of Elizabeth Mast and C. Lee Mast; namely, Julie Ann Mast, Katherine Louise Mast and Jonathan Lee Mast, through their legally appointed guardian.

Jurisdiction was conferred upon the trial court under the provisions of 28 U.S.C. § 1332 (Diversity of Citizenship). The appeal comes to us under 28 U.S.C. § 1291.

---

4. "Not wishing to further complicate my will of which this codicil is to become a part, but hoping to improve and clarify some of the foregoing provisions, I wish to set down several more points, as follows: * * *." (Ex. 10).

5. The opinion of the trial court is reported at 290 F.Supp. 671 (D.Ariz.1968).

*Change of Beneficiaries of Policy*

■ The adjudication of the Arizona court that the holographic will and its similarly drawn codicils were valid testamentary instruments and properly admitted to probate, is binding here. Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946); Byers v. McAuley, 149 U.S. 608, 615, 13 S.Ct. 906, 37 L.Ed. 867 (1893); Republic of Iraq v. First National City Bank, 353 F.2d 47 (2d Cir.), cert. denied, 382 U. S. 1027, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). The effect of the May 18, 1965, Second Codicil which purports to change the beneficiaries of the life insurance contract is properly within the jurisdiction of the federal court for determination. Markham v. Allen, *supra.* It is the basis upon which the executors must rely. They pin their reliance upon Doss v. Kalas, 94 Ariz. 247, 383 P.2d 169 (1963). The issue there, as here, was whether a will executed by a policy owner effected a change of beneficiaries in the face of a policy provision which specifically set out another procedure which should be followed. An earlier case, McLennan v. McLennan, 29 Ariz. 191, 240 P. 339 (1925) [6] had held that the method of changing beneficiaries set out in the policy contract was exclusive and must be followed strictly. The *Doss* court reviewed its earlier holding and noted that in *McLennan* the court had stated three exceptions to the general rule requiring strict compliance with policy provisions: (1) If the insurer has waived strict compliance; (2) if it be beyond the power of the insured to comply literally with the regulations, equity will treat the change as regularly made; and (3) if the insured had done all in his power to effect the change, but before the change is completed he dies, equity will treat the change as having been made.

*McLennan* was not an attempt to change a beneficiary by will. It was an inter-vivos transaction in which the insured did not meet the policy requirements and was so notified and instructed as to the proper manner in which to change the beneficiary. Thereafter although ample time elapsed in which the proper change could have been made, it was not. Instead, there was an indication that the insured had changed his mind. Upon such a state of facts the court did not and could not say that the original abortive attempt came within any exception. The *Doss* court therefore distinguished its earlier decision on the facts. *Doss, supra,* 94 Ariz. at 251–252, 383 P.2d at 172.

It then stated the general rule from *McLennan* and continued as follows:

"Other authorities, however hold that when the power to make a change of the beneficiary is reserved to the insured by the policy, and the insurer does not demand full compliance with the procedure to effect the change as set out in the policy, the insured may change his beneficiary by a valid will.

'We feel that the provisions of this policy setting up the method by which a beneficiary may be designated or changed are for the protection of the insurer, and we do not feel that the technical provisions are placed in the policy to protect the insured against hasty or impetuous action. In the case now before this court, the insurer is no longer a party, and the battle is between possible beneficiaries. Since this is the case, there is no reason to invoke technical provisions designed to protect an insurer against the

---

6. Both decisions of the Supreme Court of Arizona although separated in time by 38 years, were written by Lockwood, Justice.

The first was written by the Hon. Alfred C. Lockwood who served his state with distinction as a Superior Court Judge, Justice and then Chief Justice of the Arizona Supreme Court. The more recent decision was written by his daughter, the Hon. Lorna E. Lockwood who has served with equal distinction as Superior Court Judge and also as Justice and now Chief Justice of the Arizona Supreme Court.

possibility of double payment. We feel that the clearly manifested intent of the insured should control.' Sears v. Austin, 292 F.2d 690, 693 (9th Cir. 1961).

We believe that the latter rule is founded on the better reasoning. The provisions in a policy of insurance as to the procedure for making a change of beneficiary are for the benefit of the insurer. If the insurer does not choose to require enforcement thereof, and the rights of the respective claimants alone are before the court, the intent of the insured should govern. Sears v. Austin, supra." 94 Ariz. at 250–251, 383 P.2d at 171.

We note that in *Doss* there were two policies involved. One policy contained a provision for change of beneficiary and the other did not. The decision of the court applied to both policies and held that a will was effective to change the beneficiaries of both policies.

■ The court pointed out that if a will can be effective to change the beneficiary of a policy in the face of a policy provision which provides a method for change but does not include change by will, then, a fortiori, a will would be effective to change the beneficiary of a policy which specified no particular method for doing so. The court emphasized the clear intent of the testator to make the change and the acquiescence of the company in his wishes after his death. The court also relied upon Sears v. Austin, 292 F.2d 690 (9th Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 365, 7 L. Ed.2d 192 (1961).[7] While that case did interpret a policy of life insurance issued pursuant to a federal statute, the basic reasoning of the court is in accord with the principles of *Doss*. We believe as did the trial court that where, as

here, there is no doubt about the intent of the insured and the insurer has clearly indicated that it does not assert strict compliance with the policy provision for its own protection, that intent as clearly expressed in a will duly admitted to probate is effective to change the beneficiary of the policy, under the law of Arizona.[8]

■ Alternatively, the trial court found that the nature of Mrs. Mast's mental state as expressed in her holographic documents was such that it was beyond her power to comply with the provisions of the policy. Said the court in its opinion:

"There is substantial evidence in this case that Mrs. Mast was a frightened mother, who did not want her husband to learn of the change in beneficiaries. It was beyond her power, in her then mental state, to literally comply with the requirements of the policy on the change of beneficiaries. Consequently, I should employ the powers of a court of equity and treat the change of beneficiaries as having been regularly made, all within the confines of the second exception mentioned and enunciated by the Arizona Supreme Court in McLennan v. McLennan." 290 F.Supp. at 676.

As such the decision of the trial court was also predicated upon the second exception to the general rule as noted in *McLennan*.

We find that these determinations are not clearly erroneous and we affirm the trial court's findings. Lundgren v. Freeman, 307 F.2d 104 (9th Cir. 1962). It follows that the trial court reached the correct conclusion by applying either *Doss* or *McLennan*.

---

7. The statutory provision that created the uncertainty resolved by Sears v. Austin, 292 F.2d 690 (9th Cir. 1961), has been amended to avoid the *Sears* result. Pekonen v. Edgington, 298 F.Supp. 158 (E.D. Cal.1969).

8. We note that there were no others who claimed vested interests in the policy proceeds which would be affected by this change. C. Lee Mast, the primary beneficiary designated in the policy, asserted, testifying at the trial, no claim on his own behalf to the policy proceeds. R.T. 52–69.

### Renunciation

■ The foregoing establishes the holographic will as effecting a change of beneficiaries from the terms in the policy. The holographic will directs that $5,000 be paid to C. Lee Mast and that the remainder be paid to the estate of the insured. We now consider whether action was taken by C. Lee Mast which divested him of his interest and passed his $5,000 share of the proceeds to the children. The executors disclaim any interest in this amount and leave the contest between the Trustee in Bankruptcy and the children. The district court found [9] "with considerable reluctance" that the issue must be resolved against the children. It is as to this part of the decision that we disagree with the trial court.

After the death of Mrs. Mast in an automobile accident, her husband, C. Lee Mast, was indicted for first degree murder in connection with that death. While being held, he executed a power of attorney giving to Mr. Ashby Lohse, his attorney, complete power "to make any agreement he deems proper in connection with the probate of my wife's estate, her will or wills, and all life insurance policies and all community assets." This power was executed after a conversation in which Mast told Attorney Lohse that if his wife did not wish him to have the proceeds of the life insurance policies, he did not want them. Lohse deposition 11. Attorney Lohse, representing Mast as attorney in fact, and Attorney Robert Tullar, representing the Southern Arizona Bank and the Mast children, later entered into an agreement whereby Mast did in fact specifically agree to renounce all of his interest in the policy in question.[10]

It is apparent that the letter constitutes an executory bilateral contract between Mast acting through his attorney as one party and his children acting through their attorney as the other. The children performed their part of the agreement, i. e., the typewritten will was offered for probate and the holographic will was withdrawn. The evidence appears clear that the later re-offer of the holographic documents was not of the children's doing. Thus we conclude that Mast received his bargained-for exchange and that the children are entitled to their promised performance. Mast's subsequent demand that he be paid the proceeds of the policy and his later refusal to sign the endorsements authorizing payment to the children can not relieve him of his obligation.

9. Franklin Life Ins. Co. v. Mast, 290 F. Supp. 671, 674 (D.Ariz.1968).

10. That agreement in pertinent part, provides as follows:
"Ashby I. Lohse, Esq.
Merchant, Lohse, Donahue & Bloom
406 North Church Avenue
Tucson, Arizona
　　Re: Estate of Elizabeth L. Mast, Deceased.
Dear Ashby:
My understanding of the agreement entered into with you, Colonel Lingard, and me, is as follows:
1. Mr. Mast will renounce all rights to inherit under Mrs. Mast's will;
2. Mr. Mast will renounce in favor of his children any rights he may have under the double indemnity policy secured from Tracy Prater;
　　* 　　* 　　* 　　* 　　*
5. In return for Mr. Mast's renunciations as herein above recited it is agreed that we will offer the typewritten Will prepared by your office for probate and will not offer the holographic Will. It is further understood and agreed that the Southern Arizona Bank will act as Executor thereof and that this office will act as attorneys for the Executor;
6. We all understand that the intent and purpose of this arrangement is to seek the greatest security for the minor children.
If this accurately recites your understanding please indicate your concurrence by your signature on the bottom of the original and return same to me. A copy is enclosed for your file.
Thank you.
　　Yours very truly,
　　CHANDLER, TULLAR, UDALL & RICHMOND
　　By /s/ Robert S. Tullar
RST:jc
/s/ Ashby I. Lohse
/t/ Ashby I. Lohse"

The trial court was of the opinion that Mast's subsequent equivocal actions made it clear that his secret intention was to eliminate some obstacles to the defense of his criminal case which would arise from the probate of the holographic will. Whatever may have been the secret intent of Mast, it is clear that the intent of his attorney in fact, Attorney Lohse, was to enter into a bona fide agreement. This he did. Assuming, arguendo, then, that Mast did have a secret intent or motive, this would not prevent an enforceable contract from emerging. The parties are bound by their covenants or promises which are put down in writing, judged by objective standards and not by their secret intentions or motives. Noland Company v. Graver Tank & Manufacturing Co., 301 F.2d 43, 47 (4th Cir. 1962); Bach v. Friden Calculating Machine Co., 155 F. 2d 361, 365 (6th Cir. 1946). *See generally,* 4 Williston on Contracts §§ 610, 610A (Jaeger ed. 1961).

In *Bach, supra,* the court referred to the rule as follows:

"As was said by Professor Corbin in, 'Cardozo on the Law of Contracts,' 52 Harvard Law Review 446, 'The meaning that will determine legal effect is that which is arrived at by objective standards; one is bound, not by what he subjectively intends, but by what he leads others reasonably to think that he intends.'" 155 F.2d at 365.

Such is also the law of Arizona. Sam Levitz Furniture Co. v. Safeway Stores, Inc., 10 Ariz.App. 225, 457 P.2d 938 (1969), reversed on other grounds, 105 Ariz. 329, 464 P.2d 612 (1970). Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318 (1966).

In *Levitz, supra,* the Arizona Court of Appeals said:

"There is evidence showing that the undisclosed intent of Safeway was to use both the St. Pierre property and the Levitz property, but we do not consider such evidence to be pertinent to an interpretation of this bilateral, integrated contract. It is not the undisclosed intent of the parties with which we are concerned, but the outward manifestations of assent. This principle of law is expressed well by Justice Holmes:

'* * * the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs * * *.' Holmes, The Path of the Law.

That courts should not be concerned with the undisclosed intent of the parties is made crystal-clear by a long line of decisions of our Supreme Court, * * *" (Citations omitted) 10 Ariz.App. at 228, 457 P.2d at 941.

Even assuming the intent ascribed to Mast to assist him in his pending criminal case that was, according to the testimony of his attorney in fact who entered into the agreement for him, not the sole motive for the agreement. Lohse deposition at 10–12. The collateral intention or motive to better his legal position was not inconsistent with a meeting of the minds and did not destroy the mutuality of the agreement.[11]

We therefore reverse the judgment of the trial court in favor of the Trustee in Bankruptcy for the recovery of the sum of $5,000 from the policy proceeds and direct that said sum be paid to Jack I. Redhair, Guardian Ad Litem for Julie Ann Mast, Katherine Louise Mast and Jonathan Lee Mast. We affirm the judgment in all other respects.

11. No question was raised in the trial court nor presented upon appeal as to public policy considerations in withholding one will from probate and substituting another. See Ariz.Rev.Stats.Ann. § 14–311 (1956). In the absence of a presentation of this question of Arizona law by the parties, we do not reach it here.