616 P.2d 908

**HELENA CHEMICAL COMPANY, an Arkansas Corporation, Plaintiff–Appellant,**

v.

**COURY BROS. RANCHES, INC., an Arizona Corporation; and Albert M. Coury, Jr., Defendants–Appellees.**

No. 1 CA–CIV 4538.

Court of Appeals of Arizona, Division 1, Department B.

June 5, 1980.

Rehearing Denied July 25, 1980.

Review Denied Sept. 11, 1980.

Evans, Kitchel & Jenckes, P. C. by Newman R. Porter and Amy R. Coy, Phoenix, for plaintiff–appellant.

Corbet & Eagleburger by G. Gregory Eagleburger Phoenix, for defendants–appellees.

## OPINION

O'CONNOR, Judge.

This is an appeal from the order of the trial court granting a new trial in an action originally brought by appellant, Helena Chemical Company, as a suit on an open

account for agricultural chemicals. The appellees, Coury Bros. Ranches, Inc., counterclaimed for damages to their crops. A jury trial resulted in verdicts in favor of appellant on its complaint and against appellees on their counterclaim. Appellees' motion for new trial was granted. We reverse the trial court's order granting a new trial and reinstate the jury verdicts.

Coury Bros. Ranches, Inc., purchased agricultural chemicals from appellant on an open account. Payment was not made. Appellant supplied testimony that it informed appellees that any further sales to Coury Bros. Ranches Inc. would be conditioned on the furnishing of an accurate and current financial statement and the personal guaranties of its officers. Appellant also offered advice on the types of chemicals needed and the methods of application to the different fields. No personal guaranty was furnished to appellant until three months later. In the meantime, appellant continued to supply agricultural chemicals and the cotton fields suffered some damage by pink bollworm infestations. The evidence at trial was conflicting on most material issues. After an eight day trial, the jury returned unanimous verdicts for appellant on its complaint and against appellees on their counterclaim.

The trial court subsequently granted appellees' motion for new trial and assigned as the reasons: 1) that appellees "were deprived of a reasonable amount of time for their cross–examination of [plaintiff's witness] John R. Snell;" 2) that the trial court erroneously excluded from evidence appellees' exhibit 29; 3) that the trial court erroneously sustained objections to testimony of appellee, Albert M "Butch" Coury, concerning his intention in signing the guaranty instrument; and 4) that the trial court erroneously allowed evidence that appellees had a financial interest in a shopping center and that a judgment had been taken against Coury Bros. Ranches, Inc.

The issue on appeal is whether any of the four reasons stated by the trial court justifies the granting of a new trial.

The granting of a new trial is "to a great extent discretionary with the trial court." *Kotsonaros v. State of Minnesota,* 79 Ariz. 368, 369, 290 P.2d 478, 479 (1955). However, if it appears clearly from the record that there was no error in the matters presented in the motion for new trial, it is an abuse of discretion for the court to grant a new trial. *City of Phoenix v. Harlan,* 75 Ariz. 290, 255 P.2d 609 (1953); *Rothman v. Rumbeck,* 54 Ariz. 443, 96 P.2d 755 (1939); *Southern Arizona Freight Lines, Ltd. v. Jackson,* 48 Ariz. 509, 63 P.2d 193 (1936); *Sharpensteen v. Sanguinetti,* 33 Ariz. 110, 262 P. 609 (1928).

## ALLEGED LIMITATION ON CROSS–EXAMINATION

The trial court in granting the new trial stated in part as follows:

Defendants, over their strenuous objections, were deprived of a reasonable amount of time for their cross–examination of John R. Snell, a key rebuttal witness for plaintiff.

\*　　\*　　\*　　\*　　\*　　\*

Snell was called as a rebuttal witness on Friday, 17 March about 2:00 P.M. All parties knew he had to return to California at the close of the trial proceedings on that date. His direct testimony commenced about 2:00 P.M. and ended at 4:38 P.M. Defense counsel, despite his vigorous objections, was instructed that he should limit his cross–examination to approximately one hour.

Defense counsel objected to the time limit on the basis that he could not possibly conduct an adequate cross–examination of one of the most important witnesses for plaintiff in such a short time .... Nevertheless, in compliance with the court's request defense counsel did finish his cross–examination at 5:38 P.M.

In retrospect, the court has concluded that its arbitrary ruling on the Snell cross–examination deprived defendants of an important right and may have resulted in an unfair advantage to plaintiff.

The record reveals that counsel for appellant called Mr. Snell for direct examination

on Friday, March 17, 1978, at about 2:00 P.M. The minute entry for March 17 indicates a recess was taken by the court from 2:50 P.M. to 3:20 P.M., when Mr. Snell resumed the stand. Another recess was taken from 4:30 P.M. until 4:40 P.M. The transcript reflects there was a conference at the bench by the judge and counsel, which was not reported, following which the court announced to the jury that in order "to finish with this witness today" the court would "run past 5:00 o'clock." Nowhere in the record or transcript is there an order by the court limiting the time for cross–examination, nor an objection by counsel to the proceedings nor to any time limitation imposed by the court. Cross–examination of the witness by counsel for appellees began at 4:40 P.M. and ended at 6:00 P.M., when appellees' counsel announced he had no further questions.

■ The reasons assigned by the trial court for granting a new trial on the basis of a limitation on appellees' right of cross–examination of the witness Snell are not supported by the record. For the trial court to have considered any alleged error regarding the cross–examination of a witness as a ground for granting a new trial, an objection on the record must have been raised to the procedure in the trial court. No objection was made.

Parties may not sit by and allow error which is not fundamental to be committed, without protesting and asking the trial court to correct the error at the time, and then later, when the judgment goes against them, ask for a new trial on that ground.

*Southern Arizona Freight Lines, Ltd. v. Jackson,* 48 Ariz. at 518, 63 P.2d at 197. *See also Farish v. Beebe,* 20 Ariz. 196, 179 P. 51 (1919); *Deer Valley Industrial Park Development and Lease Co. v. State,* 5 Ariz. App. 150, 424 P.2d 192 (1967).

This case illustrates the desirability of the rule requiring objections to be made on the record in order to serve as the basis later for a motion for new trial. Had such an objection been made on the record at trial, the opposing counsel would have been fore-

warned of a possible issue and could have considered making different arrangements for the witness' cross–examination. *See Nordhaus v. Marek,* 317 Ill.App. 351, 45 N.E.2d 993 (1943).

■ Moreover, appellees have failed to indicate how they were prejudiced by the alleged limitation on cross–examination of Snell. The cross–examination lasted one hour and twenty minutes and counsel for appellees then stated he had no further questions for the witness. Even if an objection had been made on the record concerning the cross–examination procedures at the time of trial, the error, if any, does not rise to the level of fundamental error. *Harries v. United States,* 350 F.2d 231 (9th Cir. 1965); *Johnson v. Elliott,* 112 Ariz. 57, 537 P.2d 927 (1975).

We find that it appears clearly from the record that the trial court abused its discretion in granting a new trial on the alleged limitation on cross–examination of Snell.

### EXCLUSION OF EXHIBIT 29

The trial court also assigned as a reason for granting a new trial that it had improperly excluded from evidence appellees' exhibit 29. Exhibit 29 was an envelope showing a postmark of September 24, 1975. The existence of the exhibit was not disclosed prior to trial by appellees but was offered at trial as impeachment evidence.

Appellant's witness, Barry Wakefield, testified he had talked to Albert M. "Butch" Coury about the personal guaranties in the early part of September and told him he would give the blank standard forms of guaranty to John Snell to give to appellees. During cross–examination of Barry Wakefield by counsel for appellees, exhibit 29 was offered in evidence as the envelope in which Wakefield had mailed the blank forms of guaranty postmarked September 24, 1975. Counsel for appellant objected on the basis that the exhibit was not merely impeachment evidence, but was offered as substantive evidence of the mailing date and to contradict Wakefield's testimony concerning the date of his conversation

with "Butch" Coury, and should have been disclosed prior to trial. The trial court sustained the objection, but later determined on the appellees' motion for new trial that it should have been received.

■ Evidence which is to be used *solely* for impeachment may be withheld from opposing counsel under rules VI(a) and XVI(c), Uniform Rules of Practice of the Superior Court, and sealed and filed with the clerk of the court for use at trial. Exhibits which are admissible in evidence solely for impeachment purposes are not discoverable under the Rules of Civil Procedure. *Zimmerman v. Superior Court,* 98 Ariz. 85, 402 P.2d 212 (1965). Evidence which contradicts a witness' testimony on a substantive issue is not impeachment. *Ries v. McComb,* 25 Ariz.App. 554, 545 P.2d 65 (1976). *See also Camelback Contractors, Inc. v. Industrial Commission,* 125 Ariz.App. 205, 608 P.2d 782 (1980).

■■ Exhibit 29 was offered on the issue concerning the date on which appellant's agent had mailed the blank forms of guaranty to appellees. The appellant's witness testified it was in early September. The exhibit showed a postmark from the latter part of September. The evidence was not solely for impeachment of the witness; it served as substantive evidence of the mailing date and as contradiction of the witness' testimony. As such, it was discoverable and was required to have been disclosed to the opposing counsel before trial. The trial court's original order sustaining appellant's objection to the exhibit for failure to disclose it prior to trial and was not error and it cannot be the basis for a new trial. No prejudice resulted to appellees by the refusal of the offered exhibit because Albert M. "Butch" Coury was allowed to testify that the guaranty forms were received in late September and that he had seen the date on the envelope.

### EVIDENCE OF INTENT IN SIGNING GUARANTY

The trial court also based the granting of a new trial on its exclusion of testimony of Albert M. "Butch" Coury that he had no intention of becoming personally liable when he signed the guaranty. The court's order granting a new trial stated:

> The court ruled out the proposed testimony of Albert "Butch" Coury that when he signed the guaranty agreement below the corporate name and adding after his name his title, (assistant vice–president), he had no intention of creating a personal liability. The agreement is either ambiguous or a corporate guarantee only; in either case Coury's testimony would have been admissible.

One of the issues at trial was whether Albert M. "Butch" Coury was personally liable to appellant for the debt owed by Coury Bros. Ranches, Inc. by virtue of a guaranty agreement (exhibit 9) dated October 29, 1975, and signed by "Albert M. Coury, Asst. Vice–Pres., Coury Bros. Ranches, Inc."

Appellees' counsel asked Albert M. "Butch" Coury the following question on direct examination:

Q. Exhibit 9, which you forwarded to Mr. Wakefield, in signing that document, in your opinion, or in the opinion of whoever you sought, who was guaranteeing what?

Appellant objected on the grounds that the secret intent and opinion of the witness was immaterial. In our opinion the court properly sustained the objection.

A guaranty is "a promise to answer for the debt . . . of another person." *Black's Law Dictionary* 833 (rev. 4th ed. 1968). There is a split of authority on whether parol evidence is admissible to show whether a guaranty of a corporation's obligation was signed in the corporate officer's representative or individual capacity. *See* Annot., 70 A.L.R.3d 1276–1293 (1976). The corporation is already bound on the underlying obligation. Therefore, where the guaranty would be meaningless if the corporate agent had not signed in an individual capacity, some jurisdictions find that the guaranty is clear and unambiguous on its face and parol evidence that the agent signed in a representative capacity is not

admissible. *See, e.g., Ricker v. B–W Acceptance Corp.*, 349 F.2d 892 (10th Cir. 1965); *Schauer v. Morgan*, 67 Mont. 455, 216 P. 347 (1923); *American Petrofina Co. v. Bryan*, 519 S.W.2d 484 (Tex.Civ.App. 1975). Other courts have allowed parol evidence of the signing in a representative capacity. *See, e.g., Ellis v. Stone*, 21 N.M. 730, 158 P. 480 (1916); *Brasher Motor and Finance Co. v. Anderson*, 20 Utah 2d 104, 433 P.2d 608 (1967); *Puget Sound National Bank v. Selivanoff*, 9 Wash.App. 676, 514 P.2d 175 (1973).

■ We have found no Arizona case directly deciding this issue. However, it is not necessary to determine whether parol evidence was or was not properly admissible to show that the signature was made in a representative capacity. Even if the guaranty agreement was ambiguous on its face, the undisclosed intent, motive or opinion of the signer is not admissible as evidence of the meaning of the written agreement. A contract is construed in accordance with the intention of the parties as "judged by objective standards and not by their secret intentions or motives." *Franklin Life Insurance Co. v. Mast*, 435 F.2d 1038, 1045 (9th Cir. 1970). Arizona courts have held:

It is not the undisclosed intent of the parties with which we are concerned, but the outward manifestations of assent. This principle of law is expressed well by Justice Holmes:

'. . . the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs . . . .' Holmes, The Path of the Law.

That courts should not be concerned with the undisclosed intent of the parties is made crystal–clear by a long line of decisions of our Supreme Court, including: *Goodman v. Newzona Investment Co.*, 101 Ariz. 470, 421 P.2d 318 (1966); *Brand v. Elledge*, 101 Ariz. 352, 419 P.2d 531 (1966); *LeBaron v. Crismon*, 100 Ariz. 206, 412 P.2d 705 (1966); *Galbraith v. Johnston*, 92 Ariz. 77, 373 P.2d 587 (1962).

*Sam Levitz Furniture Co. v. Safeway Stores, Inc.*, 10 Ariz.App. 225, 228, 457 P.2d 938, 941 (1969), *rev'd on other grounds*, 105 Ariz. 329, 464 P.2d 612 (1970) (footnote omitted).

No additional questions were asked of the witness concerning any objective manifestations of his intent in signing the guaranty. The trial court correctly sustained the objection to the one question which was asked concerning the witness' opinion or unexpressed intent.

## EVIDENCE OF FINANCIAL INTEREST IN SHOPPING CENTER AND OF JUDGMENT DEBT

■ The final ground stated by the trial court for the granting of a new trial was the following:

Evidence that one of both defendants were financially interested or involved in a shopping center, and that Baukol Construction Company had taken a judgment against Coury Bros. Ranches, Inc. was irrelevant, inadmissible and prejudicial to defendants in some degree.

The subject of the shopping center and a judgment against Coury Bros. Ranches, Inc. in favor or Baukol Construction Company was raised by appellant in the cross–examination of Albert M. "Butch" Coury. The witness was questioned about the accuracy of the corporate financial statement furnished to appellant. Then several questions were asked concerning the corporation's participation in a shopping center development and a resulting judgment against it in favor of the contractor. Counsel for appellees objected to the form of one question and to the use of a deposition which was not yet filed. No objection was made as to the relevancy or prejudicial nature of any of the questions about the shopping center or the Baukol judgment.

■ As stated previously in this decision, a motion for new trial may not be based on a question to which no objection was made at the time of trial unless the error is fundamental. *Southern Arizona Freight Lines, Ltd. v. Jackson*, 48 Ariz. at 518, 63 P.2d at 197.

None of the reasons assigned by the trial court for granting appellees' motion for new trial is supported by the record or the law. The court abused its discretion in granting a new trial. The order granting a new trial is reversed and this cause is remanded to the trial court for reinstatement of the verdicts and for entry of judgment in accordance therewith.

JACOBSON and WREN, JJ., concur.