813 P.2d 318

**Deborah C. DEESE, Plaintiff–Appellee, Cross Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant, Cross Appellee.**

**No. 1 CA–CV 88–540.**

Court of Appeals of Arizona, Division 1, Department D.

June 25, 1991.

---

Thur, Dawson & O'Sullivan by Calvin C. Thur and Steven C. Dawson, Scottsdale, for plaintiff-appellee, cross appellant.

O'Connor, Cavanagh, Anderson, Westover Killingsworth & Beshears, P.A. by Ralph E. Hunsaker and David M. Bell, Phoenix, for defendant-appellant, cross appellee.

## OPINION

McGREGOR, Judge.

Deborah Deese (Deese) brought this action against State Farm Mutual Automobile Insurance Company (State Farm) after State Farm refused to pay a portion of medical benefits that Deese claimed were due under an insurance contract. The decisive issue on appeal is whether State Farm, having prevailed on Deese's claim for breach of contract, could be found liable for the tort of bad faith.

### I.

Deese purchased an automobile insurance policy from State Farm. The policy provision pertaining to medical benefits provided:

> We will pay reasonable medical expenses, for **bodily injury** caused by accident, for services furnished within three years of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices. The **bodily injury** must be discovered and treated within one year of the date of the accident.

On March 16, 1985, Deese was involved in a two-car accident. Elise Mankosa, D.C., treated Deese for injuries she sustained in the accident until April 29, 1985, and charged Deese $1,756.00 for her services. Deese submitted the bill to State Farm for payment.

A State Farm senior claims representative, John Vance, questioned whether Dr. Mankosa's charges were reasonable and necessary pursuant to the policy. Vance sent the bill to Daniel Glassman, D.C., for review. Dr. Glassman concluded that Deese's injuries were not as severe as Dr. Mankosa had diagnosed and recommended that State Farm reduce the charges by $667.00. Dr. Glassman also concluded that Deese's treatment should have ceased on April 20, 1985.

A State Farm claim committee adopted Dr. Glassman's recommendation and State Farm issued Deese a check for $1,089.00. State Farm informed Deese that, if Dr. Mankosa brought an action against her to recover the unpaid portion of the bill, State Farm would provide an attorney to repre-

sent her and would satisfy any judgment entered against her.

Beginning on June 11, 1985, Sandra Clark, D.C., treated Deese and charged $296.00 for her services. Deese submitted the bill to State Farm. State Farm, however, refused to pay the bill because, according to Dr. Glassman, treatment should have ceased on April 20, 1985. State Farm also informed Deese that it would not pay any further medical expenses arising out of the accident.

On January 24, 1986, Deese filed a two-count complaint against State Farm alleging breach of the insurance contract and the tort of bad faith. Deese alleged that, under the terms of the insurance policy, State Farm had a duty to pay her reasonable and necessary medical expenses and that State Farm breached the contract by failing to pay fully the medical claims submitted. The gravamen of Deese's tort claim was that State Farm's unreasonable failure to pay the medical claims she submitted constituted a breach of the insurance contract's implied covenant of good faith and fair dealing. Deese requested compensatory and punitive damages, costs and attorney's fees.

At trial Deese maintained that State Farm systematically reduced claims for chiropractic care through the use of select review chiropractors, such as Dr. Glassman, who predictably recommended reduction of chiropractic claims. State Farm maintained that the unpaid amounts on Deese's chiropractic claims were not reasonable or necessary expenses, and thus not compensable under the terms of the insurance contract. During trial Deese moved for a directed verdict on the contract and bad faith claims and State Farm moved for a directed verdict on the contract, bad faith and punitive damage claims. The trial court denied both parties' motions.

The trial court separately instructed the jury on the elements of breach of contract and the tort of bad faith. The jury returned a verdict in favor of State Farm on the breach of contract claim. The jury, however, returned a verdict in Deese's favor on the bad faith claim and awarded Deese compensatory and punitive damages. The trial court entered judgment in accord with the verdicts and, after offsetting the parties' requests for attorney's fees and costs incurred in connection with the claim on which each was successful, awarded Deese $10,196.94 in costs and $29,129.50 in attorney's fees. Both parties moved for judgment notwithstanding the verdict. The court denied the motions.

State Farm filed a notice of appeal and Deese filed a notice of cross appeal. We have jurisdiction pursuant to A.R.S. § 12–2101.B.

## II.

State Farm argues that, in an action for benefits allegedly due under the terms of an insurance contract, a finding that an insurer unreasonably or in "bad faith" withheld benefits must necessarily be predicated upon a finding that the insurer breached the insurance contract. Deese argues that *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986), establishes that breach of contract is not an indispensable requisite to showing bad faith. For the reasons set out below, we conclude that Deese interprets *Rawlings* too broadly and that, under the facts of this case, State Farm was entitled to judgment on the bad faith claim as a matter of law.

## A.

In defining the elements of the tort of bad faith, Arizona courts consistently have held that when an insured bases a bad faith claim on the insurer's unreasonable failure to pay or delay in paying a claim, the insured must demonstrate that a valid claim exists under the terms of the insurance policy. In *Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866 (1981), the supreme court first expressly recognized that breach of an insurer's implied duty to act in good faith in dealing with an insured's claim constitutes the tort of bad faith. The tort arises when the insurer "intentionally denies, fails to process or pay a claim without a reasonable

basis for such action." *Noble*, 128 Ariz. at 190, 624 P.2d at 868.

In reaching its conclusion, the court enunciated the policy reasons underlying its decision to permit tort recovery for an insurer's breach of the implied covenant of good faith. The court recognized that the purpose of an insurance contract is protection against calamity and that "[w]hen the loss insured against occurs the insured expects to have the protection provided by his insurance." *Id.* at 189–90, 624 P.2d at 867–68. Therefore, "[t]he whole purpose of insurance is defeated if an insurance company can refuse or fail, without justification, to pay a *valid* claim." *Id.* (emphasis added).

In several subsequent decisions, the court has repeated the test set out in *Noble* for defining when a claim for bad faith arises. *See, e.g., Dodge v. Fidelity & Deposit Co. of Maryland*, 161 Ariz. 344, 346, 778 P.2d 1240, 1242 (1989) (imposing liability upon a surety "who in bad faith refuses to pay a valid claim" will deter improper conduct); *Filasky v. Preferred Risk Mutual Insurance Co.*, 152 Ariz. 591, 597, 734 P.2d 76, 82 (1987) (insurer's intentional failure to pay a claim without a reasonable basis for such action constitutes a breach of the implied duty of good faith); *Brown v. Superior Court*, 137 Ariz. 327, 336, 670 P.2d 725, 734 (1983) (tort of bad faith arises "when an insurance company intentionally denies, fails to process, or fails to pay a claim without a reasonable basis for such action"); *Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529, 538, 647 P.2d 1127, 1136, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982) (insurer's bad faith refusal to pay a valid claim under a policy of insurance gives rise to a cause of action in tort).

If an insured's claim for benefits does not fall within the coverage of the policy, the insurer's failure to pay the claim does not constitute a breach of the insurance contract. "[T]he implied covenant in an insurance contract neither entitles the insured to payment of claims that are excluded by the policy, nor to protection in excess of that which is provided for in the con-

tract, nor to anything inconsistent with the limitations contained in the contract." *Rawlings*, 151 Ariz. at 155, 726 P.2d at 571. When no coverage exists, it is self-evident that an insured seeking recovery for bad faith cannot establish the basic requirement that an insurer failed to pay a valid claim and cannot demonstrate that the insurer lacked a reasonable basis for denying the claim.

We therefore conclude that when an insured's claim for bad faith arises from an insurer's failure to pay a claim for benefits due under an insurance contract, establishing a breach of contract by showing the insurer denied, failed to pay or failed to process a valid claim is a prerequisite to stating a claim for bad faith.

The two Arizona decisions that have addressed the specific issue raised by this appeal reached the same conclusion. In *Brown v. Superior Court*, the insureds, who brought an action against the insurer for bad faith failure to pay a loss of earnings claim, argued that the trial court erred in denying their motion to compel production of the insurer's entire claims file. In deciding whether the insurer could be compelled to produce the entire file the supreme court assumed, but did not decide, that if an insured's bad faith claim arises out of the insurer's failure to pay a valid claim, then the bad faith claim must be predicated on a finding that the insured breached the insurance contract, i.e., that a valid claim exists:

> It is possible, but unclear from our record, that [the insured] is maintaining simultaneous actions or counts for recovery of the loss of earnings coverage under the policy and for damages for the insurer's alleged bad faith in failing to pay the claim. *Should the former terminate adversely to [the insured], one would assume that the bad-faith claim must fall.*

*Brown*, 137 Ariz. at 330 n. 1, 670 P.2d at 728 n. 1 (emphasis added).

In *Nationwide Mutual Insurance Co. v. Stevens*, 166 Ariz. 372, 802 P.2d 1071 (1990), Division Two of this court considered an action filed by an insured

against his insurer alleging breach of contract and the tort of bad faith because the insurer refused to pay a claim pursuant to the uninsured motorist provision of the insured's policy. Although the court concluded that the bad faith claim was premature, it stated that "[t]he basis for a bad faith action must be a valid claim." *Stevens*, 166 Ariz. at 375, 802 P.2d 1074.

Deese argues, however, that *Rawlings v. Apodaca* modified earlier decisions defining the elements of a bad faith claim and obviates the need for breach of contract as a predicate to her bad faith tort claim. We disagree. Mr. and Mrs. Rawlings (Rawlings), the insureds, suspected that their neighbors were responsible for a fire that resulted in extensive damage to their dairy farm. Rawlings and their neighbors had purchased insurance from the same insurer. Despite their suspicions, Rawlings did not conduct their own fire investigation because, based on the insurer's assurances, they expected to receive a copy of the fire investigation report that the insurer generated. Although the insurer paid Rawlings $10,000.00, the policy limit, for their losses, it failed to provide them a copy of the fire investigation report. Rawlings eventually brought a tort action for bad faith, alleging that the insurer's actions impeded the Rawlings' pursuit of their claim against their neighbors and that the insurer therefore breached the implied duty of good faith and fair dealing.

The *Rawlings* court, confronted with the issue whether breach of the insurer's express contractual duty to pay a claim was a necessary element of Rawlings' bad faith claim, held:

> Review of Arizona first-party and third-party cases demonstrates that the implied covenant of good faith and fair dealing can be breached even though the company performs its express covenants under the insurance contract. *The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance.*

151 Ariz. at 157, 726 P.2d at 573 (emphasis added).

This holding is consistent with the conclusion that we reach in this case. Rawlings' bad faith claim was based not upon the insurer's breach of its contractual duty to pay a valid claim, but upon the insurer's unreasonable impediment of its insureds' tort action against their neighbors. Because the purpose of Rawlings' insurance was to protect against fire loss, the insurer's impediment of their action to recover for fire loss deprived the insureds of the very protection they had sought to insure against, even though the insurer paid its policy limits.

In this case, in contrast, the security for which Deese bargained, and that which the insurer could not unreasonably deny, was payment of claims for reasonable and necessary medical expenses. The jury, however, found that State Farm did not breach the insurance contract. Absent a finding that State Farm breached the insurance contract by failing to pay a valid claim, State Farm did not deprive Deese of the protection for which she contracted and, as a matter of law, cannot be liable for breach of the implied duty of good faith and fair dealing.

The supreme court's decision in *Dodge v. Fidelity & Deposit Co. of Maryland,* 161 Ariz. 344, 778 P.2d 1240 (1989), supports our conclusion that *Rawlings* did not, by implication, revise the elements of the tort of bad faith. In *Dodge,* the court held that sureties are insurers for purposes of bad faith tort liability. Relying on *Noble* and *Rawlings,* the court again stated that one of the most important factors to consider in imposing tort liability for breach of the implied duty of good faith and fair dealing is the security or protection the insured sought to gain by purchasing insurance. *Dodge,* 161 Ariz. at 346, 778 P.2d at 1242. The court concluded that a surety who in bad faith refuses to pay a *valid* claim by deliberately refusing to pay an obligation arising from the bond deprives the insured of the protection he sought by purchasing insurance. *Id.*

*Rawlings,* therefore, did not modify the elements of the tort of bad faith. Under the holding of that case, as well as prior and subsequent decisions, to recover for bad faith an insured must establish that an insurer unreasonably and intentionally jeopardized the protection the insured sought to gain by purchasing a policy of insurance. In most instances, as is true here, the insurer's action that jeopardizes that interest of the insured will involve denial or delay in paying a valid claim. The jury's finding that State Farm did not breach its contract of insurance establishes that State Farm did not deprive Deese of the protection she gained by purchasing a policy of insurance.

**B.**

■ Deese argues, however, that the jury's finding that State Farm did not breach the insurance contract can be explained by the jury instructions. The instruction pertaining to the bad faith claim stated that if the jury awarded insurance policy benefits under the breach of contract claim, then the jury could not award those same damages under the bad faith claim. Deese contends that the jury's verdict could indicate that it concluded not that State Farm performed its duty under the contract to pay Deese's claims, but merely that the jury awarded Deese damages that resulted from State Farm's breach of contract under the bad faith claim. Deese, however, failed to object at trial to any ambiguity that the jury instructions may have presented, and therefore has waived this argument on appeal. *See Montano v. Scottsdale Baptist Hospital, Inc.,* 119 Ariz. 448, 454, 581 P.2d 682, 688 (1978)

(failure to object at trial to an error in the jury instructions amounts to waiver). Moreover, we cannot speculate about the basis for the jury's verdict and conclude that the jury decided some of the issues inherent in the verdict in favor of the party against whom the verdict was returned.[1] *Cf. King & Johnson Rental Equipment Co. v. Superior Court,* 123 Ariz. 256, 257, 599 P.2d 212, 213 (1979) (a general verdict implies a finding in favor of the prevailing party on every fact essential to support his action); *Citizens Utilities Co. v. Firemen's Insurance Co.,* 73 Ariz. 299, 303, 240 P.2d 869, 871 (1952) (when basis jury uses to reach its verdict is not known, we will presume in support of the verdict and judgment).

**C.**

■ Deese did not establish at trial that State Farm breached the insurance contract, thereby depriving her of the protection she sought to gain by purchasing insurance. Accordingly, we reverse the judgment entered in Deese's favor on the bad faith claim.[2]

Because Deese is no longer the successful party within the meaning of A.R.S. §§ 12–341.01.A and –346.A, we vacate the trial court's award of attorney's fees and costs and remand this matter to the trial court to redetermine attorney's fees and costs incurred prior to this appeal. *See Squaw Peak Community v. Anozira Development,* 149 Ariz. 409, 414, 719 P.2d 295, 300 (App.1986) (because of reversal on the merits, appellate court must remand attorney's fees issue to trial court for redetermination).

1. Deese did not request or submit special verdicts or interrogatories. *See* Rule 49(g), Arizona Rules of Civil Procedure.

2. At Deese's request and over State Farm's objection, the trial court incorrectly instructed the jury that Deese could establish her bad faith claim by showing the insurer acted unreasonably, knowing it was acting unreasonably or with such reckless disregard that such knowledge could be imputed. Deese appropriately does not argue that, if the existence of a valid claim is an element of a bad faith claim, she is entitled to a new trial because the jury instruc-

tion was erroneous. A party is bound by the theory of his own instructions and cannot complain of an instruction given at his request. "One who misconceives the law governing his rights in a trial, and succeeds in convincing the court thereof, ought to be estopped to take any advantage of it upon appeal." *Wilkinson v. Phoenix Ry. Co. of Arizona,* 28 Ariz. 216, 222, 236 P. 704, 706 (1925); *see also Roscoe v. Schoolitz,* 105 Ariz. 310, 315, 464 P.2d 333, 338 (1970) (appellee barred from raising an objection to his own instruction that submitted issue to jury).

## III.

On cross appeal Deese raises two issues in connection with the breach of contract claim. First, Deese argues that the terms of the insurance contract are ambiguous. Consequently, Deese asserts, the trial court should have construed the terms strictly in favor of coverage and therefore erred in submitting to the jury the question of whether State Farm breached the insurance contract. We disagree.

■ At trial, Deese argued that the insurance contract terms providing coverage for "reasonable" and "necessary" medical expenses are ambiguous and asked that the trial court instruct the jury that "[a]n insurance company is obligated to interpret any ambiguity in the terms of coverage in favor of the insured." Despite requests from the trial judge, however, Deese failed to identify the meaning she thought the trial judge should attach to "reasonable" and "necessary" and failed to offer any proposed instruction advising the jury of the meaning of the allegedly ambiguous contract terms.[3] Deese, therefore, has waived any error with respect to the trial court's failure to instruct the jury as to the meaning of the allegedly ambiguous terms of the insurance contract. *See Maxwell v. Aetna Life Insurance Co.*, 143 Ariz. 205, 212, 693 P.2d 348, 355 (App.1984) (appellant waived any error with respect to the trial court's failure to instruct the jury on the definition of "total disability" because appellant did not offer any instruction on the subject); *Bradshaw v. State Farm Mutual Automobile Insurance Co.*, 157 Ariz. 411, 419, 758 P.2d 1313, 1321 (1988) (insurer's failure to object to the instruction's final form and failure to offer any acceptable instruction regarding hypothetical findings amounts to waiver).

■ Deese also argues that the trial court abused its discretion by refusing to admit testimony by Steven Grunfeld, D.C., who was Dr. Glassman's partner, to impeach Dr. Glassman's testimony. After hearing Deese's offer of proof, the trial court precluded Dr. Grunfeld from testifying because Deese did not disclose Dr. Grunfeld as a witness who would testify as to substantive matters.

In excluding the witness from testifying, the trial court relied on *Helena Chemical Co. v. Coury Brothers Ranches, Inc.*, 126 Ariz. 448, 616 P.2d 908 (App.1980). In *Helena Chemical*, this court held that "[e]vidence which is to be used *solely* for impeachment may be withheld from opposing counsel under rules VI(a) and XVI(c), Uniform Rules of Practice of the Superior

---

3. With regard to the alleged ambiguities in the contract, the following exchange occurred at trial between the court and Deese's attorney, Calvin Thur:

THE COURT: Let me stop you for a second. Let's say, assuming I thought [the insurance contract] was ambiguous, how would you ask me to interpret the policy with respect to the word "necessary"? Have you given me a proposed instruction on that?

MR. THUR: Well, it's ambiguous, there—there is no interpretation of the policy. And in any event, there can be no interpretation of the—of the policy.

....

THE COURT: I don't know how you want me to tell the jury to construe [the insurance contract] if I determine that it's ambiguous, taking into account that ambiguous insurance policies are to be construed against the insurance company. I'm not leaving that to the jury. How do you want me to construe it, to mean what? Let's go on, because you didn't do it yesterday, you're not about to do it today.

MR. THUR: Well, Your Honor, yesterday the Court stated that reasonable and necessary is arguably subject to different interpretations, and with that, the case law with the Court, acknowledging that the case law clearly indicates, then, there is an ambiguity.

THE COURT: You know, the problem, I'm going to say it one more time, the problem is this: If I consider it ambiguous, I don't go to the jury and tell them, "You can read that any way you want to read it. You can read it out of the policy." Effectively, that's what you're telling me. And I asked you to come up with a resolution on how you think the jury ought to be interpreting it, it should be read. I don't care if you came up with one proposal or ten of them, you came up with none. You simply wanted to go in front of the jury and argue that it's ambiguous, construe it against the insurance company. That means nothing other than, "Write it out of the policy," and I don't think that's appropriate. So let's get on to the next point.

Court,[4] and sealed and filed with the clerk of the court for use at trial." 126 Ariz. at 452, 616 P.2d at 912. Evidence that serves both as substantive evidence and to impeach, however, must be disclosed. *Id.*

The trial court considered the substantive purposes of Dr. Grunfeld's testimony, particularly the impact of that testimony upon the issue of whether State Farm acted reasonably in considering Deese's claim for benefits. Although Dr. Grunfeld's proposed testimony would impeach that of Dr. Glassman, it would also provide substantive evidence. Accordingly, we conclude that the trial court did not abuse its discretion in finding that Deese was required to disclose the witness prior to trial.

## IV.

For the foregoing reasons, we reverse the trial court's judgment entered in Deese's favor and order judgment entered in State Farm's favor. Additionally, we remand the matter to the trial court to redetermine costs and attorney's fees incurred prior to this appeal.

VOSS, P.J., and EUBANK, J., concur.

---

4. At the time of trial, Rule VI(a)(4), Uniform Rules of Practice of the Superior Court of Arizona, provided that a joint pretrial statement must list those witnesses that each party intended to use at trial, other than those witnesses to be used solely for impeachment. This rule, since amended, now requires that the pretrial statement contain "[a] list of the witnesses intended to be used by each party during the trial." The trial in this case, however, was conducted in 1988, prior to the time that the amendments became effective. Neither party argued in the trial court or argues on appeal that these amendments somehow influence the determination of this appeal.