838 P.2d 1265

Deborah C. DEESE, Plaintiff–Appellee, Cross–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant, Cross–Appellee.

No. CV–91–0323–PR.

Supreme Court of Arizona,
En Banc.

Oct. 2, 1992.

Thur, Dawson & O'Sullivan by Calvin C. Thur and Steven C. Dawson, Phoenix, for Deese.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Hunsaker and Christopher Robbins, Phoenix, for State Farm Mut. Auto. Ins. Co.

Broening, Oberg & Woods by James R. Broening and Neal B. Thomas, Phoenix, for amicus curiae Farmers Ins. Co.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

Deborah Deese (Deese) sued State Farm Mutual Auto Insurance Company (State Farm) for breach of contract and for bad faith after State Farm refused to pay a portion of Deese's medical expenses which Deese contended were payable under her automobile policy with State Farm. A jury returned a verdict for State Farm on the breach of contract claim and for Deese on the bad faith claim. The court of appeals held:

> [W]hen an insured's claim for bad faith arises from an insurer's failure to pay a claim for benefits due under an insurance contract, establishing a breach of contract by showing the insurer denied, failed to pay or failed to process a valid claim is a prerequisite to stating a claim for bad faith.

*Deese v. State Farm Mut. Auto. Ins. Co.*, 168 Ariz. 337, 340, 813 P.2d 318, 321 (App. 1991).

We granted Deese's petition for review pursuant to Rule 23, Ariz.R.Civ.App.P., 17B Ariz.Rev.Stat.Ann. (A.R.S.) We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24. We hold that breach of an express covenant of an insurance policy is not a necessary prerequisite to a tort claim based on bad faith.

### FACTS AND PROCEDURAL HISTORY

On March 16, 1985, a Saturday, Deese was involved in a two-car accident. Over the weekend, she experienced pain in her arm and back. On Monday, March 18, she called the office of Elise Mankosa, D.C. Because Dr. Mankosa was unable to see Deese that day, an appointment was made for the following day, Tuesday. Deese also called State Farm on Monday and spoke with John Vance, a claims representative. Deese informed Vance of the accident, of her pain, and of her upcoming chiropractic treatment. Vance verified Deese's "med-pay" coverage and told her to send him the bills.

Dr. Mankosa treated Deese from March 19 until April 29, 1985, charging $1,756.00 for her services. Deese submitted Mankosa's bill to State Farm for payment. Some weeks later, before hearing from State Farm and while visiting relatives in Alabama, Deese experienced additional pain for which she sought treatment from an Alabama chiropractor, Sandra Clark. Dr. Clark treated Deese on June 11 and 12, 1985, and charged $296.00 for her services. Deese then submitted Clark's bill to State Farm.

Thereafter Vance, on July 2, 1985, wrote to Deese stating that "there is a question as to whether all of [Dr. Mankosa's charges] are reasonable and/or necessary under your policy." Presumably, the question had been raised by Vance himself, who, that same day, sent Dr. Mankosa's bills to Daniel Glassman, D.C., for review. Vance's letter to Dr. Glassman said: "I would appreciate your evaluating the bills with what information we have here. I hope this information will be sufficient for you to arrive at a conclusion."

Dr. Glassman did arrive at a conclusion and, on July 8, 1985, wrote back to Vance, questioning the severity of Mankosa's diagnosis and recommending that Mankosa's bill be reduced by $667.00. Dr. Glassman stated that Dr. Mankosa's treatment should have terminated as of April 20, 1985, approximately 9 days before it in fact did terminate. After a State Farm claim committee adopted Dr. Glassman's recommendation, State Farm, on August 9, 1985, sent Deese a check for $1,089.00, that being the amount of Dr. Mankosa's bill less $667.00. In a letter accompanying the check, State Farm informed Deese that if Dr. Mankosa sued her for the unpaid portion of the bill, State Farm would provide an attorney to represent her and would satisfy any judgment entered against her. This arrangement was unsatisfactory to Deese because Dr. Mankosa had been her family doctor and Deese did not want to

jeopardize their relationship. Deese paid the balance of Mankosa's bill.

On October 9, 1985, Vance sent Deese a second letter informing her that State Farm would not honor any of the June charges of the Alabama doctor. Vance stated: "Please be advised that under the original claim and the independent medical recommendations made, treatment for this injury should have been concluded no later than April 20, and any further charges would be and should be denied." While there had been no mention of future treatment, Vance's letter went on to inform Deese that State Farm would not pay for any future medical expenses arising from the accident. Ultimately, Deese arranged payment of the Alabama doctor's bill, in part through other insurance and in part personally.

On January 24, 1986, Deese filed a two-count complaint against State Farm, alleging both breach of the insurance contract and the tort of bad faith. In her breach of contract claim, she alleged that State Farm had breached its duty to pay her reasonable and necessary medical expenses arising out of the accident. The gravamen of her separate tort claim was that State Farm's actions were unreasonable and constituted a breach of the insurance contract's implied covenant of good faith and fair dealing. Deese requested compensatory and punitive damages, costs and attorney's fees.

For purposes of the issue dealt with in this opinion, a detailed recitation of the evidence in the month-long trial is unnecessary. It is necessary only to set forth the general positions of the parties. Deese contended that State Farm systematically reduced claims for chiropractic care through the deliberate use of select chiropractors, such as Dr. Glassman, who predictably recommended reduction of chiropractic claims. She contended, essentially, that State Farm's claims review process in this case, including the approval of Dr. Glassman's findings by a claims committee, was a sham.

State Farm, on the other hand, maintained that the claims had been properly handled, conceding, however, that it had no basis for rejecting potential future claims out of hand. State Farm contended that the unpaid amounts on Deese's chiropractic claims were not reasonable or necessary expenses and were not compensable under the terms of the insurance contract.

At trial, Deese moved for directed verdicts on the contract and bad faith claims, and State Farm moved for directed verdicts on the contract, bad faith and punitive damage claims. The trial court denied both parties' motions and then separately instructed the jury on the elements of breach of contract and the tort of bad faith. The trial court refused an instruction which would have expressly stated that a breach of contract was an essential element of the bad faith claim. The jury returned a verdict in favor of State Farm on the breach of contract claim and a verdict in favor of Deese on the bad faith claim, awarding her $3,000 compensatory damages and $75,000 punitive damages. The trial court entered judgment in accordance with the verdicts, and denied both parties' motions for judgment notwithstanding the verdict.

## ISSUE

Whether breach of an express covenant in an insurance policy is a necessary prerequisite to a bad faith tort claim.

## DISCUSSION

I. The Implied Covenant of Good Faith and Fair Dealing and the Tort of Bad Faith

In *Noble v. Nat. Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981), this court first recognized the tort of bad faith. We concluded "that there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." *Id.* at 190, 624 P.2d at 868. We held that to establish bad faith, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying

the claim." *Id.* (*quoting Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978)).

In *Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982), we noted that "the inquiry into whether an insurer has acted in bad faith towards its insured is a question of reasonableness under the circumstances of the case.... Whether the action amounts to bad faith depends upon whether the insurer failed to honor a claim without a reasonable basis for doing so." *Id.* 132 Ariz. at 538, 647 P.2d at 1136. *See also Brown v. Superior Court,* 137 Ariz. 327, 336, 670 P.2d 725, 734 (1983) ("No matter how the test is defined, bad faith is a question of reasonableness under the circumstances.").

In *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 354, 723 P.2d 703 (App.1985), *aff'd in part,* 150 Ariz. 326, 723 P.2d 675 (1986), the court of appeals observed that "[t]he tort of bad faith only arises when the insurance company intentionally denies or fails to process or pay a claim without a reasonable basis for such action. In applying this standard, however, it is necessary to determine whether a claim was properly investigated and whether the results of that investigation were reasonably reviewed and evaluated." *Id.* 150 Ariz. at 362, 723 P.2d at 711 (citing *Anderson,* 271 N.W.2d at 377); *see also Farr v. Transamerica Occidental Life Ins. Co.,* 145 Ariz. 1, 5, 699 P.2d 376, 380 (App.1984) (tort of bad faith "is established if the plaintiff demonstrates that the defendant had knowledge of or recklessly disregarded the lack of a reasonable basis for denying the claim"); *Trus Joist Corp. v. Safeco Ins. Co. of Am.,* 153 Ariz. 95, 104, 735 P.2d 125, 134 (App.1986) (same).

■ These and other cases demonstrate that whether an insurer has acted in bad faith towards its insured depends on the reasonableness of its conduct. In short, the implied covenant of good faith and fair dealing requires that an insurer treat its insured fairly in evaluating claims. "[T]he insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Rawlings v. Apodaca,* 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986) (citing *Parsons v. Continental Nat. Am. Group,* 113 Ariz. 223, 550 P.2d 94 (1976); *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal. Rptr. 691, 620 P.2d 141 (1979), *cert. denied,* 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980)). *See also Walter v. Simmons,* 169 Ariz. 229, 238, 818 P.2d 214, 223 (App.1991) ("Although the duty of good faith is inherent in any insurance contract, it is not strictly a contractual obligation; rather, it is an obligation imposed by law that governs the insurer in discharging its contractual responsibilities."); *Tank v. State Farm Fire & Casualty Co.,* 105 Wash.2d 381, 715 P.2d 1133, 1136 (1986) (an insurance company's duty of good faith means that "an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interest") (emphasis in original).

■ While the proper inquiry into whether an insurer has acted in bad faith rests on a determination of reasonableness under the circumstances, the tort is not proven by showing mere negligence. Although the initial inquiry consists of an objective finding, i.e., whether the insurer acted unreasonably, the second inquiry focuses on the insurer's conduct and whether the insurer *knew* that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it. "Mere negligence or inadvertence is not sufficient—the insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds." *Rawlings,* 151 Ariz. at 160, 726 P.2d at 576. *See also Trus Joist,* 153 Ariz. at 104, 735 P.2d at 134 ("Where an insurer acts reasonably, there can be no bad faith. However, the converse of this proposition is not necessarily true: merely because an insurer acts unreasonably does not mean that it is guilty of bad faith. Negligent conduct which results solely from honest mistake, oversight, or care-

lessness does not necessarily create bad faith liability even though it may be objectively unreasonable.")

These general principles are well-established in our case law. We set them out here not only as background, but to emphasize that our decision today in no way alters the proof required to prevail on a bad faith claim. Our resolution of this case rests on a very narrow ground: whether breach of an express covenant in an insurance policy is a necessary prerequisite to a bad faith claim.

## II. Breach of an Express Covenant of the Insurance Contract Is Not a Necessary Element of the Tort of Bad Faith

In *Rawlings v. Apodaca*, 151 Ariz. 149, 155–57, 726 P.2d 565, 571–73 (1986), this court addressed precisely the question presented here, albeit on a very different set of facts. In *Rawlings*, no question existed that Farmer's Insurance Company (Farmer's) had paid the full amount of insurance benefits due under the contract. Farmer's argument, similar to that advanced by State Farm here, was that "actionable bad faith by an insurer facing a first-party claim is limited to the unfounded refusal or delay in payment of a valid claim." *Id.* at 153, 726 P.2d at 569 (footnote omitted). In *Rawlings*, the court of appeals, as here, accepted the insurer's argument. We granted review. After canvassing the law of bad faith in both third-party cases and first-party cases, we concluded that "[f]ailure to perform the express covenant to pay the claim is not the *sine qua non* for an action for breach of the implied covenant of good faith and fair dealing." *Id.* at 157, 726 P.2d at 573. "The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very security which the insured sought to gain by buying insurance." *Id.* (citing *Noble*, 128 Ariz. at 189, 624 P.2d at 868). In our view, *Rawlings* has already decided the issue which is now reargued.

State Farm argues, however, that Deese has received what she paid for within the meaning of the *Rawlings* language. State Farm contends Deese purchased security against "financial loss from medical expenses incurred as a result of an automobile accident." Therefore, the argument goes, State Farm did not breach its duty towards Deese because the claim was paid in part and because State Farm offered to indemnify Deese against any action brought against her by Dr. Mankosa (State Farm made no indemnification offer when it rejected Dr. Clark's bill). We believe that State Farm misinterprets the scope of its duty. The core of the duty of good faith and fair dealing is that the insurer act *reasonably* towards its insured. *See, e.g., Noble*, 128 Ariz. at 190, 624 P.2d at 868; *Sparks*, 132 Ariz. at 538, 647 P.2d at 1136; *Brown*, 137 Ariz. at 336, 670 P.2d at 734; *Linthicum*, 150 Ariz. at 362, 723 P.2d at 711. We grant that security from financial loss is a primary goal motivating the purchase of insurance. *See Rawlings*, 151 Ariz. at 154, 726 P.2d at 570. That security flows from the express covenants of the insurance agreement. However, the insured also is entitled to receive the additional security of knowing that she will be dealt with fairly and in good faith. That security comes not from the express contractual terms, but from the implied covenant of good faith and fair dealing.

The court of appeals distinguished *Rawlings* on the grounds that "the purpose of [the] Rawlings' insurance was to protect against fire loss," and that Farmer's concealment of the investigation report implicating the Apodacas' negligence as the cause of the fire "deprived the [Rawlings] of the very protection they had sought to insure against...." *Deese*, 168 Ariz. at 341, 813 P.2d at 322. Finding that the only security Deese bargained for was payment of claims for reasonable and necessary medical expenses, the court of appeals concluded that the "holding [in *Rawlings*] is consistent with the conclusion that we reach in this case." *Id.* We believe the court of appeals' analysis overlooks the essence of Farmer's breach of the implied covenant of good faith and fair dealing in *Rawlings*; namely, that Farmer's acted unreasonably towards its insured by refusing to disclose the investigative report.

Plaintiff's theory in this case is similar to that of the plaintiff in *Rawlings*. Although she contends that State Farm did not pay all the contractual benefits due her, she also contends that State Farm acted unreasonably in the manner in which it processed her claim, without regard to its ultimate merits. State Farm's argument is that because it "paid [the Plaintiff] all of the benefits that the contract provided, ... [it] has not acted in bad faith towards her, regardless of how the decision was reached." Resp. to Pet.Rev., at 13. In fact, the finding of bad faith in this case is predicated precisely on the *manner* in which State Farm reached its decision. We conclude that *Rawlings* is applicable and that the court of appeals' attempt to distinguish it is unavailing.

The court of appeals also relied on two other cases to justify its holding: *Brown v. Superior Court*, 137 Ariz. 327, 670 P.2d 725 (1983), and *Nationwide Mutual Ins. Co. v. Stevens*, 166 Ariz. 372, 802 P.2d 1071 (App.1990). *See Deese*, 168 Ariz. at 340–41, 813 P.2d at 321–22. In *Brown*, this court stated, in a footnote:

> It is possible, but unclear from our record, that Brown is maintaining simultaneous actions or counts for recovery of the loss of earnings coverage under the policy and for damages for the insurer's alleged bad faith in failing to pay the claim. Should the former terminate adversely to Brown, one would assume that the bad-faith claim must fail. Obviously, there are many problems involved in allowing a claimant simultaneously to pursue both a claim under the coverage provided by the policy and a bad-faith claim based upon the insurer's refusal to pay the policy claim. One could plausibly argue that the law should not allow such simultaneous actions and that a bad-faith claim can be pursued only after disposition of the underlying policy claim. *Neither party has raised this issue nor provided us with the facts necessary to determine whether it exists. Accordingly, we do not address the issue and assume that Brown may maintain the bad-faith claim which, for all our record discloses, is the only claim extant.*

137 Ariz. at 330 n. 1, 670 P.2d at 728 n. 1 (emphasis added). We acknowledge that the *Brown* footnote is dicta and note that we expressly declined to address the issue it suggested. *Brown*, therefore, has no precedential value and is not persuasive authority for the court of appeals' holding.

*Stevens*, a court of appeals case, is more directly on point. In that case, the court of appeals held that "[t]he basis for a bad faith action must be a valid claim." 166 Ariz. at 375, 802 P.2d at 1074. Notably lacking in the *Stevens* opinion is any analysis of why this holding pertains. The court merely states that "[l]eading Arizona first-party bad faith cases involve claims that were either paid by the insurer prior to litigation or were determined to be covered under insurance provisions in the bad faith action." *Id.* (citing major Arizona bad faith cases). We grant that in the usual case a bad faith claim will be predicated on the breach of an express covenant in the policy. However, absence of a breach of an express term of the policy is not fatal to a bad faith claim where the plaintiff can prove a breach of the implied covenant of good faith and fair dealing. That portion of the *Stevens* opinion holding or suggesting otherwise is overruled.

We reaffirm our holding in *Rawlings* that breach of an express covenant is not a necessary prerequisite to an action for bad faith, and we address directly the issue we declined to consider in *Brown*. We hold that a plaintiff may simultaneously bring an action both for breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith claim, provided plaintiff proves a breach of the implied covenant of good faith and fair dealing.

We recognize, of course, that insurance companies are not required to pay invalid claims and are entitled to take all reasonable steps to protect their interests. Independent claim reviews are common and often beneficial. Our decision today should not be read to preclude the use of legitimate independent examinations and reviews.

**510**

## DISPOSITION

Sections II and IV of the opinion of the court of appeals are vacated. Because the court of appeals ordered judgment for State Farm based on its resolution of the issue discussed in this opinion, it did not reach other issues presented by the appeal and cross-appeal. These issues include the sufficiency of the evidence to support the jury's finding of bad faith and its award of punitive damages. Accordingly, this case is remanded to the court of appeals for resolution of those issues in a manner consistent with this opinion.

FELDMAN, C.J., and CORCORAN and ZLAKET, JJ., concur.

MARTONE, Justice, concurring in the judgment.

The issue here is not "whether breach of an express covenant in an insurance policy is a necessary prerequisite to a bad faith tort claim." *Ante,* at 506. Nor do I agree that the answer to that question is always "no." Thus I disagree with the court's absolutist resolution of the issue.

Whether breach of contract is a prerequisite to a bad faith tort claim depends upon the similarity between the essential ingredients of each claim. Where the claims are essentially the same, the answer to the question should be a resounding "yes." For example, where there is a claim for breach of contract for failure to pay benefits on the policy, and the bad faith tort claim is based on an allegation that the failure to pay was without a reasonable basis under *Noble v. National Life Ins. Co.,* 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981), then proof of the contract claim is a prerequisite to the bad faith tort claim. By definition, if the defendant has not breached its contract with the plaintiff, then it had a reasonable basis to deny the claim.

At the other extreme, where the claim of bad faith has nothing at all to do with the contract claim, as in *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986), then proof of the contract claim is irrelevant to proof of the bad faith tort claim. In *Rawlings,* the contract claim was for fire insur-

ance under the policy. 151 Ariz. at 152, 726 P.2d at 568. The bad faith tort claim was for failing to disclose to the insured favorable information which would have helped the insured in a separate dispute with its neighbor. *Id.* These were wholly different claims and thus Farmers' payment of the contract claim was irrelevant to the assertion of the bad faith tort claim. In that context, the contract claim was not an essential ingredient of the tort claim.

The case before us is somewhere between these two extremes. The basis of plaintiff's bad faith tort claim is an allegation that the defendant has engaged in a plan and practice of always resisting bills for chiropractic treatment without regard to whether any individual claim is valid. Plaintiff's breach of contract claim seeks recovery for the defendant's failure to pay plaintiff's specific chiropractic bill. Unlike the claims in *Rawlings,* these claims are not entirely separate. However, unlike the first illustration posited above, they are not entirely identical either. On the pleadings in this case, the jury could find that while plaintiff's chiropractic bill which was the subject matter of its contract claim was not reasonable or was not necessary, they could also find that the defendant breached its duty of good faith and fair dealing to the plaintiff because the denial of the claim was not based upon a careful evaluation of plaintiff's claim, but was part of a plan and practice to resist all such claims and the defendant should not profit from the mere fortuity that this particular claim was unreasonable. Thus in this case, the breach of contract claim was not a prerequisite to the bad faith tort claim.

I therefore suggest the following analytical framework to explain today's decision. Whether breach of contract is a prerequisite to a bad faith tort claim depends upon whether the contract claim is an essential element of the tort claim. If it is, then breach of contract is a prerequisite to the bad faith tort claim. If not, then breach of contract is not a prerequisite to the bad faith tort claim. Because the contract claim in the case before us is not an essential ingredient of the bad faith tort claim, I concur in today's judgment, but not in the

universally applicable rule which the court adopts to reach it.