NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 20 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| EAGLE EYE PRODUCE, INC., an Idaho corporation, | No. 21-16274 |
| Plaintiff-Appellee, | D.C. No. 4:16-cv-00103-SHR |
| v. | MEMORANDUM* |
| AGRICOLA FAADER S.P.R. DE R.L., a Mexican rural production society; FERNANDO ESPINOZA DE LOS MONTEROS BAZUA, a resident of the Republic of Mexico; SANTA SOFIA HORTICOLA S.A. DE C.V., a Mexican Corporation, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the District of Arizona
Scott H. Rash, District Judge, Presiding

Argued and Submitted June 14, 2022
San Francisco, California

Before: BYBEE, CALLAHAN, and COLLINS, Circuit Judges.

Defendants Agricola Faader S.P.R. de R.L. ("Faader"), Fernando Espinoza

De Los Monteros Bazua ("Espinoza"), and Santa Sofia Horticola S.A. de C.V.

("Santa Sofia") (collectively, "Defendants") appeal from the district court's entry

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

of a consent judgment, which expressly preserved Defendants' right to appeal specified adverse orders that had been entered earlier in the case. The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We affirm.

1. We reject Defendants' challenge to the district court's August 2018 order holding that, as a sanction for Defendants' failure to comply with the court's January 2018 discovery order, it would be "taken as established for purposes of the action[] that Santa Sofia is the successor entity to FAADER."

After a protracted discovery dispute, the district court in January 2018 granted Plaintiff's motion to compel under Federal Rule of Civil Procedure 37, and the court ordered Defendants to produce "all 2016 & 2017 financial records by February 3, 2018." The district court did not clearly err in concluding that Defendants had failed to comply with the January 2018 order. *See Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021) (holding that "any factual findings related to [a discovery] sanction are reviewed for clear error"). Defendants contend that, with respect to the categories of unproduced documents referenced in the August 2018 order, Defendants had produced either the documents in question or other documents from which the information could be derived. But even if Defendants are correct that some of the referenced documents (such as a checkbook register and many weekly financial reports) had already been

2

produced, many others had not.  Indeed, *after* the August 2018 sanctions order, there was a substantial production of further documents from Santa Sofia—including tax returns,[1] additional electronic records, and additional hardcopy financial records—and that belated production underscores the extent of Defendants' failure to comply with the January 2018 order.[2]  And although the language of the January 2018 order could have been more clearly expressed, its meaning was clear enough, especially in light of the particulars of the parties' disputes that preceded it.

The district court did not abuse its discretion in choosing to impose an issue sanction for Defendants' failure to comply with the January 2018 discovery order. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) ("We review discovery sanctions for abuse of discretion").  Rule 37 expressly grants district courts discretion to direct, as a sanction for failure to

---

[1] We reject Defendants' contention that tax returns do not qualify as "financial records" within the scope of the January 2018 order.  Plaintiff's description of the range of financial records sought in its motion to compel, as set forth in the detailed request-by-request schedule required by the local rules, *see* D. ARIZ. L. CIV. R. 37.1, clearly confirmed that tax returns were being sought by that motion.  Accordingly, construed in context of the parties' moving papers, the court's order required the production of tax returns for 2016 and 2017.

[2] Defendants complain that the district court's order failed to separately discuss the various defendants, but there was no prejudicial error.  Faader and Espinoza failed even to respond to the motion for sanctions, and Plaintiff's presentation concerning their failure to comply with the January 2018 order therefore stood largely unrebutted.  Santa Sofia, by contrast, did defend its document production, but as we have explained, the district court did not commit clear error in concluding that its production efforts were insufficient.

comply with a discovery order, that "designated facts be taken as established for purposes of the action." *See* FED. R. CIV. P. 37(b)(2)(A)(i). Moreover, the issue taken as established by the district court bore "a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001). Plaintiff explained in its motion to compel that it sought the requested financial documents from Defendants precisely in order to understand the relationship between Faader and Santa Sofia and to establish that "Santa Sofia can be deemed the successor to FAADER." Defendants argue that only the initial alleged transfers of assets between Faader and Santa Sofia in 2015 were relevant, and that additional financial records from 2016 and 2017 were immaterial to the successor issue. But the district court did not abuse its discretion in ordering discovery of a broader range of financial information, which could conceivably elucidate more clearly the financial relationship between the two companies after Santa Sofia's formation. Nor did it abuse its discretion in subsequently ruling that, when Defendants failed to comply, this particular sanction should be imposed with respect to the relevant issue that was the subject of that discovery.

Finally, Defendants assert that the district court's issue sanction amounted to a "terminating sanction" that could not be imposed unless the court first made a finding of willfulness and applied the multipart test for "determin[ing] whether a

4

case-dispositive sanction under Rule 37(b)(2) is just." *Conn. Gen. Life*, 482 F.3d at 1096. But the class of such "case-dispositive" sanctions does not include one that, "although onerous, was less than a dismissal." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see also Conn. Gen. Life*, 482 F.3d at 1096 (describing a "terminating sanction" as a "default judgment against a defendant or dismissal of a plaintiff's action"). As the continued litigation that followed the sanction order confirms, the court's issue sanction was not case-dispositive and did not amount to a dismissal. *Cf. Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169–70 (9th Cir. 2012) (identifying "an adverse inference instruction" as a "less drastic sanction[]" than default judgment).

2. Defendants contend that the district court erred in granting Plaintiff's partial summary judgment motion, but we find no reversible error.

a. We reject Defendants' challenge to the district court's order granting Plaintiff's motion to strike certain items of evidence that Defendants submitted with their opposition to Plaintiff's summary judgment motion. By its plain terms, that order struck only paragraphs 9, 12, and 16, and Exhibits E and J, of Espinoza's declaration in opposition to summary judgment. Because the "USDA Market News Reports" attached to Espinoza's declaration were contained in Exhibit D, Defendants are simply wrong in contending that the order struck them.

Exhibits E and J consisted of spreadsheets in which Espinoza purported to

5

undertake certain analyses of underlying pricing data, and Espinoza sought to authenticate these analyses in Paragraphs 12 and 16 of his declaration. Defendants do not contest that these August 2019 analyses were not disclosed before the May 9, 2019 deadline for the completion of discovery, but Defendants argue that it makes no sense for the district court to have stricken Espinoza's analyses when the underlying data remained in the summary judgment record. This argument, however, merely underscores that, even if there was any error by the district court, it was harmless. If, as Defendants contend, Espinoza's analysis merely consisted of simple comparison and "addition of numbers in the unstruck exhibits," the striking of those exhibits makes no ultimate difference to the range of inferences that a reasonable jury could draw from the underlying data. And, as we explain below, the underlying materials that Espinoza analyzed are insufficient to defeat summary judgment. *See infra* at 8–10.

Paragraph 9 of Espinoza's declaration merely set forth his subjective understanding of the contractual language concerning Plaintiff's obligation to "endeavor to obtain the best prices." But even assuming that it was erroneous to strike this paragraph, any error was harmless given that the contracts remained in the summary judgment record and Espinoza's brief description of his subjective understanding of the contracts' meaning adds nothing to the relevant contractual analysis. *See infra* at 10–11 (explaining that, under Arizona law, a contract is

6

construed in accordance with the objective meaning of its terms).

b. Defendants assert that the district court erred in granting summary judgment to Plaintiff with respect to Defendants' counterclaims and related affirmative defenses and with respect to the issue of Defendants' liability on Plaintiff's claim for breach of contract. Specifically, Defendants allege that the district court erred in finding no triable issue of material fact as to (1) whether Plaintiff failed to endeavor to obtain the best prices; (2) whether Plaintiff engaged in self-dealing; and (3) whether the "Foodservice Rebate" charged by Plaintiff was fictitious. We review the district court's grant of summary judgment de novo, *see Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018), and we construe the evidence in the light most favorable to Defendants, *see Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017). We affirm the district court's grant of partial summary judgment as to each of these three issues.

(i). There is no genuine dispute as to whether Plaintiff endeavored to get the best prices.

The relevant contracts required Plaintiff to "*endeavor* to obtain the best prices for the kind and quality of crops produced," but they also stated that Plaintiff "makes no guarantee as to prices actually received for the Crops" (emphasis added). Thus, on their face, the contracts did not guarantee that Defendants would actually receive the best prices, but only that Plaintiff would "endeavor" to obtain

7

such prices.  Accordingly, to create a genuine issue as to whether Plaintiff complied with this obligation, Defendants had to do more than simply show that others in the market obtained higher prices; they had to show that Plaintiff failed to "endeavor" to obtain the best prices that were reasonably available under the circumstances.  Defendants failed to do so.

Defendants rely heavily on the USDA Market News Reports, which they contend show that the market average prices were above those obtained by Plaintiff.  But even assuming that that is what these reports show, that would merely establish that Plaintiff did not *succeed* in obtaining the best prices.  Without more, these reports do not show that Plaintiff did not *endeavor* to obtain such prices.

Defendants contend that Plaintiff's failure to endeavor to obtain better prices is shown by what they assert is record evidence of Plaintiff's self-dealing. Defendants point to invoices showing that Plaintiff sold some of the crops to Eagle Eye Grape Guys, LLC ("EEGG")—an affiliate of Plaintiff—and that EEGG subsequently resold the products for a higher price, often times even on the same day.  In opposing summary judgment below, Plaintiff argued that these discrepancies "could be explained by any number of factors including billing of freight charges in the invoice price or other factors not attributable to any wrongdoing," and that Defendants had presented no evidence to guide the trier of

8

fact in determining what inferences to draw from the bare fact of the discrepancy.

We agree that the mere existence of such discrepancies, without more, does not

support a nonspeculative inference of self-dealing. Even assuming that Defendants

are correct in positing that Plaintiff's sales to EEGG are essentially sales to itself,

such on-paper sales would not be expected to involve an actual movement of

goods, with associated freight charges, but the subsequent sales prices to outside

vendors *would* be expected to reflect such costs.[3] Absent *some* record evidence to

elucidate these sorts of considerations, a jury would have to rely on sheer

speculation to know what to make of the same-day invoices with different prices.

Defendants simply failed to carry their burden to present evidence in opposition to

summary judgment that would address these critical gaps.

(ii). In addition to arguing that Plaintiff failed to obtain the best prices,

Defendants also contended that Plaintiff engaged in prohibited self-dealing in

violation of 7 C.F.R. § 46.29(c), a regulation issued under the Perishable

Agricultural Commodities Act, 7 U.S.C. § 499a *et seq*. That regulation provides

that a "commission merchant" such as Plaintiff may not sell "produce received on

consignment or joint account" to "any person or firm having direct or indirect

---

[3] Indeed, in many of the instances in which there are same-day sales first to EEGG and then to the Kroger/Smith's supermarket chain, the sales invoice *to EEGG* lists the place of delivery as "Kroger/Smith's" or "Smith's." That confirms that there was no contemplated interim physical movement of goods *to EEGG* that would generate a need to cover freight costs, unlike the sales and deliveries to Kroger/Smith's.

9

control over his business, without specific prior authority of the consignor or the joint account partner." *See* 7 C.F.R. § 46.29(c). However, in the contracts at issue, Defendants expressly "acknowledge[d] and approve[d] the sale of the Produce to companies related to [Plaintiff], specifically Eagle Eye California and Eagle Eye Farms." Even assuming *arguendo* that EEGG's omission from the list of the two companies "specifically" mentioned means that EEGG is not covered by this language, Defendants have failed to present sufficient evidence to support the view that Defendants were thereby affected in any way that would support their counterclaims or affirmative defenses. Defendants' sole theory on this score in their opening brief is that sales to EEGG allowed Plaintiff to earn a "mark-up" when the goods were promptly resold from EEGG to retailers, but that theory fails for the reasons that we have already explained.

(iii). Defendants also failed to create a triable issue as to whether Plaintiff impermissibly charged a "food service rebate."

The plain language of the contracts states that, in addition to a "commission equal to ten percent (10%) of the gross sales price of the Crops," Plaintiff "shall also charge a food service rebate of 2% of the gross sales price of the Crops." Although the labels attached to the two charges differ, the unambiguous meaning of this language is that Plaintiff would charge a total of 12% of the gross sales price. Espinoza stated in his declaration that he *subjectively* thought this language

10

meant that the moneys collected under this 2% charge would only be used by Plaintiff to pay rebates to customers, but his declaration does not state that he ever communicated that understanding of the language to Plaintiff prior to the execution of the contracts. It is well settled that "the undisclosed intent, motive or opinion of the signer is not admissible as evidence of the meaning of the written agreement." *Helena Chem. Co. v. Coury Bros. Ranches, Inc.*, 616 P.2d 908, 913 (Ariz. Ct. App. 1980). Rather, "[a] contract is construed in accordance with the intention of the parties as 'judged by objective standards and not by their secret intentions or motives.'" *Id*. (citation omitted). Here, the contractual language authorizing the charge plainly imposes no such limitation on how the funds may be spent, nor does it impose, for example, any requirement that Plaintiff first show that it owes rebates to customers before it may collect the charge. It simply imposes an additional 2% flat charge and calls it a "food service rebate." Accordingly, Defendants failed to raise a triable issue that Plaintiff breached the contracts in this respect.

Finally, Espinoza's declaration does not say that Plaintiff ever affirmatively communicated to him that it shared his alleged subjective understanding of the 2% charge, such that Espinoza was thereby misled in signing the contracts. Although Espinoza's declaration does contend that Plaintiff "apparently has the same understanding" of what a "rebate" means, he based that claim only on an internal

11

spreadsheet created by Plaintiff after the contracts were signed. Defendants thus failed to establish any fraud-based affirmative defense arising out of the contractual provision imposing the 2% charge.

c. For the foregoing reasons, all of Defendants' challenges to the district court's grant of partial summary judgment fail.

**AFFIRMED.**